434 S.E.2d 406

**Willard PLUMLEY, Plaintiff,**

**v.**

**Willis Ray MAY, Jr., Defendant.**

**No. 21614.**

Supreme Court of Appeals of
West Virginia.

Submitted June 1, 1993.

Decided July 22, 1993.

John H. Bicknell, Greene, Ketchum, Bailey & Tweel, Huntington, for plaintiff, Willard Plumley.

John W. Bennett, Eiland & Bennett, Logan, for defendant, Willis May.

William L. Mundy, Renatha S. Garner, Mundy & Adkins, Huntington, for Allstate Ins. Co.

WORKMAN, Chief Justice:

The Circuit Court of Logan County has presented this Court with the following certified question:

Is an action seeking underinsured motorist coverage, which coverage pursuant to statute is provided for all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an underinsured motor vehicle because of bodily injury or property damage, barred by the personal injury statute of limitations, when such action against the tortfeasor is filed after the expiration of the limitations period, following settlement with and release of the tortfeasor and his liability insurer, but when the underinsured motorist insurance carrier consented to the settlement and the release of the tortfeasor and agreed to waive its subrogation rights and when an action seeking a declaration of underinsured motorist coverage and also seeking damages for injuries sustained in the accident by the plaintiff was filed within the two year statute of limitations against the underinsured motorist insurance carrier alone?

By its ruling on the Defendant's motion to dismiss, the circuit court answered the question in the negative and we agree with that determination.

## I.

On June 5, 1988, Plaintiff Willard Plumley's automobile was struck by an automobile driven by Defendant Willis May. Mr. May had primary liability insurance coverage of $100,000 per person and $300,000 per accident. By settlement agreement, Mr. May's insurer paid its policy limit per person of $100,000 to Mr. Plumley.

■ Mr. Plumley subsequently filed a declaratory judgment action directly against his own underinsured motorist carrier, Allstate Insurance Company ("Allstate"), seeking a declaration that Mr. May was underinsured, that Mr. Plumley was entitled to stack underinsured motorist coverage, and requesting a determination of the extent of coverage to which Mr. Plumley was entitled. Allstate denied coverage, contending that the tortfeasor did not meet the statutory definition of "underinsured motor vehicle" because he had policy limits equal to Mr. Plumley's underinsured limits.[1] The United States District Court for the Southern District of West Virginia, in *Plumley v. Allstate Insurance Co.*, 772 F.Supp. 922 (S.D.W.Va.1991), held that no determination could be made regarding the amount of coverage to which the plaintiff was entitled because there had been no finding as to the amount of damages the plaintiff was legally entitled to recover against the alleged tortfeasor. 772 F.Supp. at 924. The court also noted that a direct action against the insurer providing underinsurance motorist coverage was not authorized West Virginia Code § 33–6–31 until a judgment had been obtained against the underinsured motorist. *Id.* The court therefore granted the defendant's motion for summary judgment and reasoned that "to permit the amendment [to the complaint adding the tortfeasor as a party] would virtually eliminate the affirmative defense of the statute of limitations." *Id.*

The Plaintiff filed a personal injury action directly against the alleged tortfeasor on July 6, 1990, more than two years after the occurrence of the motor vehicle accident in which the Plaintiff was allegedly injured. In response, the Defendant filed a motion to dismiss on the ground that the action against him was barred by the two-year statute of limitations applicable to personal injury actions. The lower court denied the motion to dismiss based upon its determination that this is an action arising under the Plaintiff's contract of insurance with Allstate and is therefore not subject to the two-year statute of limitations. Upon motion of the parties and pursuant to

---

**1.** We note at the outset that Allstate's argument in this regard has essentially been invalidated by our decisions in *State Automobile Mutual Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990) and *Pristavec v. Westfield Insurance Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990). In syllabus point 4 of *Youler*, we explained that the statutory definition of "underinsured motor vehicle" found in West Virginia Code § 33–6–31(b) is to be interpreted as follows:

> *W.Va.Code*, 33–6–31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle. Accordingly, the amount of such tortfeasor's motor vehicle liability insurance coverage actually available to the injured person in question is to be deducted from the total amount of damages sustained by the injured person,

and the insurer providing underinsured motorist coverage is liable for the remainder of the damages, but not to exceed the coverage limits.

183 W.Va. at 558, 396 S.E.2d at 739.

In syllabus point 5 of *Pristavec*, we explained:

> In light of the preeminent public policy of the underinsured motorist statute, which is to provide full compensation, not exceeding coverage limits, to an injured person for his or her damages not compensated by a negligent tortfeasor, this Court holds that underinsured motorist coverage is activated under *W.Va. Code*, 33–6–31(b), as amended, when the amount of such tortfeasor's motor vehicle liability insurance actually available to the injured person in question is less than the total amount of damages sustained by the injured person, regardless of the comparison between such liability insurance limits actually available and the underinsured motorist coverage limits.

184 W.Va. at 332, 400 S.E.2d at 576.

West Virginia Code § 58–5–2 (1992), the lower court stayed this action and certified the issue to this Court.

## II.

The motor vehicle accident which precipitates this action occurred on June 5, 1988. By June 5, 1990, no civil action had been filed by Mr. Plumley directly against the alleged tortfeasor. Thus, Allstate contends that any civil action filed against the alleged tortfeasor subsequent to June 5, 1990, should be barred due to the expiration of the statute of limitations. Additional facts, however, surrounding the tortured procedural history of this case must be examined. When Mr. Plumley settled with Mr. May's insurer for liability limits, Mr. May and his carrier were released from all further liability. Allstate consented to the settlement and release and waived its subrogation rights against Mr. May. The release expressly preserved Mr. Plumley's claim for underinsured motorist coverage under his own Allstate policy.

When his efforts to obtain underinsurance benefits were thwarted in the United States District Court for the Southern District of West Virginia, Mr. Plumley filed an action directly against Mr. May, with whom he had already settled. It was indeed a circuitous procedural route to access the underinsurance benefits to which Mr. Plumley believed he was entitled. The action against Mr. May was filed on July 6, 1990, approximately one month after the expiration of the two-year statute of limitations. The circuit court denied the motion to dismiss, reasoning that the sole purpose of the suit was contractual. Specifically, the circuit court recognized that Mr. Plumley had no purpose in suing Mr. May except to access the underinsurance benefits allegedly available through Allstate. The circuit court also noted that Mr. May had been fully and completely released with Allstate's consent and that a suit had been filed against Allstate to collect underinsured motorist benefits before the expiration of the two-year statute of limitations, thereby providing Allstate with notice.

## III.

In determining whether an injured party's direct action against his own insurer is an action in tort or an action in contract, other jurisdictions which allow such direct action have concluded that it is an action in contract. *See e.g., Murphy v. United States Fidelity & Guar. Co.,* 120 Ill.App.3d 282, 75 Ill.Dec. 886, 458 N.E.2d 54 (1983); *Ayers v. State Farm Mut. Auto. Ins. Co.,* 558 N.E.2d 831 (Ind.Ct.App.1990); *Uptegraft v. Home Ins. Co.,* 662 P.2d 681 (Okla.1983); *Safeco Ins. Co. v. Barcom,* 112 Wash.2d 575, 773 P.2d 56 (1989). Allstate contends that these opinions from other jurisdictions are of no persuasive value because they are based upon the premise, previously unaccepted by this Court, that a claim can be directly asserted against one's own insurance carrier. In syllabus point 2 of *Davis v. Robertson,* 175 W.Va. 364, 332 S.E.2d 819 (1985), we explained that a judgment must be obtained against the tortfeasor prior to the plaintiff's attempt to assert an action directly against his own insurance carrier. In our recent decision of *Postlethwait v. Boston Old Colony Insurance Co.,* 189 W.Va. 532, 432 S.E.2d 802 (W.Va.1993), however, we held the following at syllabus point 4:

> A plaintiff is not precluded under W.Va.Code, 33–6–31(d) (1988), from suing an uninsured/underinsured insurance carrier if the plaintiff has settled with the tortfeasor's liability carrier for the full amount of the policy and obtained from the uninsured/underinsured carrier a waiver of its right of subrogation against the tortfeasor.

As in *Postlethwait,* the tortfeasor in the present case, through his liability carrier, paid the plaintiff the full amount of coverage and the underinsurance carrier waived its right of subrogation. We recognized in *Postlethwait* that "to require the Postlethwaits to take the additional step of getting a judgment against the tortfeasor flies in the face of concepts of judicial economy...." 189 W.Va. at 536, 432 S.E.2d at 806 (citing *Christian v. Sizemore,* 181 W.Va. 628, 632, 383 S.E.2d 810, 814 (1989)).

Thus, with the advent of the *Postlethwait* decision, the cases from other jurisdictions finding such action to be based in contract are not so readily distinguishable. Having determined in *Postlethwait* that a direct action was appropriate under circumstances such as those present in this case, we must now decide whether the action is based in tort or contract. Allstate directs our attention to *Davis,* 175 W.Va. at 364, 332 S.E.2d at 819, *Lusk v. Doe,* 175 W.Va. 775, 338 S.E.2d 375 (1985), and *Perkins v. Doe,* 177 W.Va. 84, 350 S.E.2d 711 (1986). These cases each dealt with suits filed pursuant to the "John Doe" provisions of the uninsured motorist statute, West Virginia Code § 33–6–31(e)(iii), which permits a plaintiff to sue the unknown entity in place of the actual tortfeasor. Our opinions in *Lusk, Davis,* and *Perkins* concluded that such action was an action in tort. Obviously, such a "John Doe" action is designed to represent a plaintiff's suit against an actual tortfeasor and therefore sounds in tort.

We do not find those authorities persuasive, however, due to the differences in the nature of the suits in those cases and the one attempted in the present case. Unlike a "John Doe" action in which "John Doe" stands in the position of the tortfeasor, this controversy is based upon the provisions of an actual contract between two known entities, Mr. Plumley and Allstate. Even in a "John Doe" suit, Justice Brotherton noted in his dissent from the majority opinion in *Perkins* that "[u]ninsured motorist protection is not a common law right of action. It is an action ... which exists only by statute and in the individual policy." 177 W.Va. at 88, 350 S.E.2d at 715. Justice Brotherton concluded that the action should not be considered to be based in tort, but rather in statute and contract. *Id.*

Similarly, the action sought to be advanced in this case is founded on the contract of insurance between Allstate and Mr. Plumley. Admittedly, in the absence of the automobile accident for which Mr. Plumley had a tort action against the tortfeasor, this contractual obligation would not have arisen. Yet, that interdependency does not alter the character of the action. Indeed, a portion of the action will determine damages suffered by Mr. Plumley as a result of the tortfeasor's negligence. Again, however, the ultimate basis for the suit is contractual. It is the contractual obligation of Allstate which Mr. Plumley seeks to enforce.

As the Supreme Court of Oklahoma aptly noted in *Uptegraft,* such a situation involves "an agreement to indemnify the insured for injuries caused by another—who was uninsured or underinsured—based on a showing that the other motorist was guilty of negligence...." 662 P.2d at 685. The Oklahoma court also recognized that while the circumstances of the tortfeasor's negligence and the plaintiff's damages need to be proven, "these are really conditions of the insurer's promise[, and] [t]he recovery of the insured is based ultimately upon the policy without which no liability could be imposed upon the insurer for the tort of another." *Id.* As we explained above, while the underlying action may sound in tort, it is the contractual nature of the relationship between the insured and the insurer which underlies an action attempting to obtain uninsured or underinsured motorist benefits.

Further, in *Murphy,* the Court held that an insured's action against her insurer, pursuant to her uninsured motorist coverage, was based solely upon the contract and was therefore governed by the statute of limitations applicable to contract actions. 120 Ill.App.3d at 287, 75 Ill.Dec. at 890, 458 N.E.2d at 58. The *Murphy* court dealt with the policy requirement that the plaintiff be "legally entitled to recover" from the tortfeasor in order to bring a direct action against the insured. *Id.* at 286, 75 Ill.Dec. at 889, 458 N.E.2d at 57. Reasoning that such requirement was designed to indicate ability to prove fault rather than the ability to pursue an action within the tort statute of limitations, the court held that the insured is not barred from recovering against the insurer merely because the tortfeasor could have asserted a statute of limitations defense. *Id.* "As such, this language means simply that the insured must be able to establish fault on the part of the uninsured motorist that gives rise to damages and prove the extent of those damages." *Id; see also Edwards v. State*

*Farm Ins. Co.*, 574 S.W.2d 505 (Mo.Ct.App. 1978); *Selected Risks Ins. Co. v. Dierolf,* 138 N.J.Super. 287, 350 A.2d 526 (1975). The *Murphy* court also explained the following:

> The plaintiff's action here was based solely upon her contract with the insurer for uninsured motorist coverage for which she paid an additional premium. Absent that contract, the plaintiff would have had no claim against the insurer and the defendant would have had no liability to the plaintiff to indemnify her for damages resulting from the tortious actions of the uninsured motorist.

120 Ill.App.3d at 287, 458 N.E.2d at 58.

■ Consequently, we hold that when a direct action against an uninsured or underinsured motorist carrier is pursued, that action sounds in contract and is governed by the statute of limitations applicable to contract actions. Where a plaintiff pursues an action to recover uninsured or underinsured motorist benefits, that action may be directed against the uninsured or underinsured carrier and does not require an action against the tortfeasor with whom the plaintiff has already settled for liability limits with the insurer's consent and waiver of subrogation rights. This decision comports with the majority of the jurisdictions having considered this issue. *See Allstate Ins. Co. v. Spinelli,* 443 A.2d 1286 (Del. 1982); *Jacobs v. Detroit Auto. Inter–Insurance Exch.,* 107 Mich.App. 424, 309 N.W.2d 627 (1981). We also adhere to the general consensus that the statute of limitations does not begin to run until a breach of the contract occurs. *See Safeco Ins. Co.,* 112 Wash.2d at 583, 773 P.2d at 60; *Taylor v. Puget Sound Power & Light Co.,* 64 Wash.2d 534, 392 P.2d 802 (1964).

Having answered the certified question, we dismiss this case from our docket and remand it to the Circuit Court of Logan County for further proceedings consistent with this opinion.

Certified question answered; Case remanded.