506 S.E.2d 608

**Glenn M. WILT and Sandra B. Wilt, Plaintiffs,**

v.

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Defendant.**

**No. 24579.**

Supreme Court of Appeals of West Virginia.

Submitted March 18, 1998.

Decided June 24, 1998.

John W. Cooper, Lori Hood, Cooper & Preston, Parsons, for Plaintiffs.

John R. Fowler, James Stebbins, Huddleston, Bolen, Beatty, Porter &· Copen, Charleston, for Defendant.

WORKMAN, Justice:

■ This case is here on certified question from the United States District Court for the Northern District of West Virginia and raises the sole issue of which statute of limitations

should be applied to claims involving unfair settlement practices that arise under the Unfair Trade Practices Act ("Act"), West Virginia Code § 33–11–1 to –10 (1996 & Supp. 1997). After examining this issue, we conclude that the statute of limitations for claims arising under the Act is the one-year statute set forth in West Virginia Code § 55–2–12(c) (1994).

The underlying action stems from a personal injury that resulted in a $1.5 million award to the Plaintiffs, Glenn and Sandra Wilt. On appeal, this Court reduced the award by $225,000—the amount assigned for hedonic damages. The Wilts sought further review by the United States Supreme Court, but that court denied Plaintiffs' writ of certiorari on May 31, 1994. On November 22, 1995, the Wilts filed the pending district court action against State Automobile Mutual Insurance Company ("State Auto"),[1] alleging unfair settlement practices.

By order dated October 30, 1997, Judge Broadwater certified the following question to this Court: "Does the one year statute of limitations set forth in West Virginia Code § 55–2–12 apply to causes of action based upon the West Virginia Unfair Claims Settlement Practices Act, West Virginia Code § 33–11–4(9)?" The district court did not state its position regarding the applicable limitations period within the certification order.[2]

Plaintiffs argue that the proper statute of limitations to be applied to actions brought under the Act is the ten-year limitations period set forth in West Virginia Code § 55–2–6 (1994) that governs written contracts. In their attempt to persuade this Court that a ten-year limitations period applies, Plaintiffs suggest that an unfair settlement claim necessarily arises from the issuance of an insurance contract. As an alternate theory, Plaintiffs maintain that the two-year tort statute of limitations found in West Virginia Code § 55–2–12 should control, rather than the one-year period provided by that same statute. State Auto advocates adoption of the one-year limitations period set forth in West Virginia Code § 55–2–12.

We first address the nature of a claim brought under the Act. While Plaintiffs contend that unfair settlement claims are contractual in nature, this Court made clear in *Poling v. Motorists Mutual Insurance Co.*, 192 W.Va. 46, 450 S.E.2d 635 (1994), that a "[v]iolation of ... [the Act] is tortious conduct." *Id.* at 49, 450 S.E.2d at 638. The only case upon which Plaintiffs rely to support their contention that an unfair settlement claim is contractual in nature is *Plumley v. May*, 189 W.Va. 734, 434 S.E.2d 406 (1993). In *Plumley*, this Court held that a claim by an insured to recover underinsurance benefits from his/her insurance carrier is governed by the statute of limitations applicable to contract actions. *Id.* at 739, 434 S.E.2d at 411. That action, as opposed to the Wilts' pending claim against State Auto, involved the direct attempt by an insured to recover policy benefits from the carrier with whom he/she entered into a contract for underinsurance.[3] In contrast to the instant case that was brought to recover damages for unfair settlement practices, *Plumley* was a *direct* suit against the insurer to obtain insurance benefits. Given this critical distinction, *Plumley* is clearly inapposite authority for Plaintiffs' contention that unfair settlement claims are contractual in origin.

As additional support for their theory that actions brought under the Act are contractual rather than tortious in nature, Plaintiffs look to the nature of damages recoverable under the Act.[4] Plaintiffs suggest that be-

---

1. State Auto was the liability insurer for the tortfeasor as well as the underinsured carrier for the Wilts.

2. Judge Broadwater did state, however, in a letter to the parties dated July 16, 1997, that he thought the controlling statute was the one-year period provided by West Virginia Code § 55–2–12 (1994).

3. All benefits payable to the Wilts under their underinsured policy ($200,000) and under the tortfeasor's liability policy ($100,000) have been paid. The district court suit solely involves the issue of unfair settlement claims, a claim that is controlled by statute rather than by the provisions of an insurance policy. *See* W.Va.Code 33–11–4(9).

4. The Act itself does not provide for damages for a violation of its provisions. In *Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981), *overruled on other grounds as*

cause damages available under the Act are narrower than those available under traditional tort causes of action, a claim brought under the Act should be viewed as contractual. In *Jenkins v. J.C. Penney Casualty Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981), *overruled on other grounds as stated in State ex rel. State Farm Fire & Casualty Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994), we identified the type of damages recoverable under the Act as including attorney's fees and even punitive damages in an appropriate case. *See* 167 W.Va. at 609, 280 S.E.2d at 259 n. 12.[5] Since punitive damages, as a rule, are not available in contract cases, the damages awarded in connection with a violation of the Act are clearly not typical of damages awarded in contract cases. *See McCormick v. Allstate Insurance Co.*, 197 W.Va. 415, 421, 475 S.E.2d 507, 513 (1996) (observing that "attorney fees are not ordinarily recoverable in simple actions on a contract"). Thus, Plaintiffs' attempt to characterize an unfair settlement claim as one sounding in contract based on the nature of available damages is untenable.

Since this Court has previously determined that unfair settlement claims are tortious in nature, the only remaining issue is whether a one-year or two-year statute of limitations applies to such actions. *See Poling*, 192 W.Va. at 49, 450 S.E.2d at 638. Both parties agree that West Virginia Code § 55–2–12 is the statute that governs tort actions. The dispute arises, however, over whether a claim brought under the Act can be categorized among those torts that are granted a two-year limitations period. West Virginia Code § 55–2–12 provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued; if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Plaintiffs argue that an unfair settlement claim is analogous to a claim for fraud, which is subject to a two-year statute of limitations. *See* W.Va.Code § 55–7–8a(a) (1994);[6] *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 593, 244 S.E.2d 321, 324–25 (1978). Viewing claims under the Act as necessarily fraudulent in nature is problematic, however, because the type of conduct that constitutes an unfair settlement claim may include a variety of factual scenarios which lack the requisite elements of a fraud claim. This is demonstrated by examining the grounds for asserting an unfair settlement claim which are set forth in West Virginia Code § 33–11–4(9).[7] Among those acts

---

stated in *State ex rel. State Farm Fire & Casualty Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994), this Court held that an implied cause of action exists to bring a claim for unfair settlement practices and identified the type of damages recoverable in such an action. 167 W.Va. at 609, 280 S.E.2d at 259 n. 12.

**5.** In *McCormick v. Allstate Insurance Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996), we stated that "[a] prevailing plaintiff in a *Jenkins* claim may recover his increased costs and expenses, including increased attorney fees ... [and] punitive damages in an appropriate case." *Id.* at 423, 475 S.E.2d at 515.

**6.** West Virginia Code § 55–7–8a(a) states:

In addition to the causes of action which survive at common law, causes of action for injuries to the property, real or personal, or injuries to the person and not resulting in

death, or for deceit or fraud, also shall survive....

**7.** West Virginia Code § 33–11–4(9) provides that:

*Unfair claim settlement practices.*—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

which qualify as unfair settlement practices are misrepresentation of pertinent facts relating to coverage, failure to timely act with regard to both the investigation of claims and the settlement of such claims, and failure to implement procedures to ensure prompt investigation of claims. *See* W.Va.Code § 33–11–4(9).

We identified those elements necessary to prove fraud in syllabus point two of *Bowling v. Ansted Chrysler–Plymouth–Dodge,* 188 W.Va. 468, 425 S.E.2d 144 (1992):

" 'The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.' Syl. Pt. 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981)." Syllabus Point 2, *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988).

While the traditionally recognized elements of a fraud claim might exist with regard to those acts of misrepresentation or deception that constitute an unfair settlement claim, other conduct that qualifies as an unfair settlement practice clearly does not amount to fraud. Examples of conduct that could not be viewed as fraudulent without additional evidence would include the failure to adopt reasonable standards for prompt investigation; the failure to act promptly with regard

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(*l*) Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(*o*) Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calendar days from the filing of the proof of loss: Provided, That should benefits due the claimant be assigned, notice to the claimant shall not be required: Provided, however, That should the benefits be payable directly to the claimant, notice to the health care provider shall not be required. If the insurer needs more time to investigate the claim, it shall so notify the first party claimant in writing within fifteen calendar days from the date of the initial notification and every thirty calendar days, thereafter; but in no instance shall a claim remain unsettled and unpaid for more than ninety calendar days from the first party claimant's filing of the proof of loss unless there is, as determined by the insurance commissioner, (1) a legitimate dispute as to coverage, liability or damages; or (2) if the claimant has fraudulently caused or contributed to the loss. In the event that the insurer fails to pay the claim in full within ninety calendar days from the claimant's filing of the proof of loss, except for exemptions provided above, there shall be assessed against the insurer and paid to the insured a penalty which will be in addition to the amount of the claim and assessed as interest on such at the then current prime rate plus one percent. Any penalty paid by an insurer pursuant to this section shall not be a consideration in any rate filing made by such insurer.

to claims; the failure to affirm or deny coverage within a reasonable time; the delay of the claims process by requiring duplicative proof of claim filing; and the failure to promptly provide a reasonable explanation for the denial of a claim or for the offer of a compromise settlement. Each of these unfair settlement practices is geared more to the aspect of fostering claims processing in a timely manner to ensure fairness to the insured, rather than being aimed strictly at the elimination of ·conduct that is fraudulent in character.

In support of their position, Plaintiffs cite the recent unpublished decision of Judge Staker of the United States District Court for the Southern District of West Virginia in *Davidson v. United States Fidelity and Guaranty Co.*, No. 3:96–0278, (decided February 13, 1997). In *Davidson,* the court concluded that violations of the Act are governed by a two-year statute of limitations. The district court relied on this Court's decision in *Courtney v. Courtney,* 190 W.Va. 126, 437 S.E.2d 436 (1993), wherein we determined that a claim for intentional infliction of emotional distress was a personal injury to which the two-year limitations period set forth in West Virginia Code § 55–2–12(b) attached.[8] 190 W.Va. at 133, 437 S.E.2d at 443. Concluding that *Courtney* eliminated survivability as the controlling mechanism for determining the appropriate limitations period under West Virginia Code § 55–2–12, the *Davidson* court ruled that the test "for choosing the applicable limitations period" "is which of the three types of causes of action set forth in [West Virginia Code] § 55–2–12 the claim is most analogous to." Based on this reasoning, the district court concluded that claims alleging unfair settlement practices are analogous to constructive fraud[9] and are therefore subject to a two-year statute of limitations. *See Stanley v. Sewell Coal*

*Co.,* 169 W.Va. 72, 77, 285 S.E.2d 679, 683 (1982).

The district court's reliance in *Davidson* on our *Courtney* decision is misplaced for several reasons. Our adoption of the two-year statute of limitations in *Courtney* was expressly premised on the conclusion that emotional injuries fall within the category of personal injuries specifically provided for in West Virginia Code § 55–2–12(b) given their correlative nature to the underlying tort itself. 190 W.Va. at 131, 437 S.E.2d at 442. Moreover, this Court's reasoning in *Courtney* cannot be read as an abrogation of common-law survivability as the method established by statute for determining the applicable limitations period for those torts that do not fall within subsection (a) or (b) of West Virginia Code § 55–2–12. The language of subsection (c) is expressly couched in terms that requires reference to a cause of action's survivability at common law. *See* W.Va.Code § 55–2–12(c). Furthermore, *Courtney* is inapposite authority because the cause of action at issue here arises statutorily. Whereas *Courtney* placed severe emotional distress under the personal injury umbrella due to the obvious connection between the underlying tort and the emotional distress arising from such tort, there is no comparable nexus between a statutory violation like that at issue in this case and a personal injury.

In considering whether an unfair settlement practices claim can be viewed as a personal injury and thereby fall within the two-year statute of limitations provided by West Virginia Code § 55–2–12(b), we first recognize that the term "personal injury" historically has referred to physical injuries to the person such as an automobile accident; slip and fall, etc. *See Maynard v. General Electric Co.,* 486 F.2d 538, 540 (4th Cir.1973) (discussing history of West Virginia's statute of limitation for personal injury claims in

---

8. This holding required a reversal of this Court's previous position that intentional infliction of emotional distress was governed by a one-year limitations period. *See Funeral Services ex rel. Gregory v. Bluefield Hospital,* 186 W.Va. 424, 413 S.E.2d 79 (1991).

9. Constructive fraud is defined as a "breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares

fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 76–77, 285 S.E.2d 679, 683 (1982). As we explained in *Stanley,* the critical difference between actual fraud and constructive fraud is that the latter "does not require proof of fraudulent intent." *Id.* at 77, 285 S.E.2d at 683.

terms of "a wrong resulting in bodily suffering and injury" and distinguishing personal injury actions from torts of slander and alienation of affections) (quoting *Kuhn v. Brownfield*, 34 W.Va. 252, 12 S.E. 519, 522 (1890)); *see generally* 51 Am.Jur.2d, *Limitation of Actions* § 103 (1970) (observing that where statute of limitations couples "injuries to the person" with actions for false imprisonment, malicious prosecution, and statutory penalties, "injuries to the person" means bodily injuries). In *Courtney*, Justice Miller retreated from a strict use of physical injuries to distinguish a personal injury by his observation that the terms used within West Virginia Code § 55–2–12(b) are "personal injuries" rather than "physical injuries." 190 W.Va. at 132, 437 S.E.2d at 443. Critical to the *Courtney* holding, however, was that fact that the emotional damages were integrally linked to the personal injury itself, in that case an assault and battery. *See* 190 W.Va. at 131, 437 S.E.2d at 442. Notwithstanding this Court's holding in *Courtney*, every claim which qualifies as a tort cannot necessarily be classified as a personal injury.

Numerous torts such as libel, defamation, false arrest, false imprisonment, and malicious prosecution take the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c). These torts, which do not fall within the realm of personal injury, are controlled by subsection (c) because they do not survive the death of a party. *See Rodgers v. Corporation of Harpers Ferry*, 179 W.Va. 637, 640, 371 S.E.2d 358, 361 (1988); *abrogated by Courtney on other grounds*, 190 W.Va. at 132, 437 S.E.2d at 442. Determining which torts fall into subdivision (c) of West Virginia Code § 55–2–12 requires reference to the survivability provisions set forth in

West Virginia Code § 55–7–8a.[10] West Virginia Code § 55–7–8a states: "(a) In addition to the causes of action which survive at common law,[11] causes of action for injuries to the property, real or personal, or injuries to the person and not resulting in death, or for deceit or fraud, also shall survive...." W.Va.Code § 55–7–8a(a) (footnote added).

Only through express statutory designation do fraud and deceit survive the death of the victim and thereby take a two-year statute of limitations. W.Va.Code § 55–7–8a(a). All other torts, those that did not survive at common law[12] and those that are not extended survivability by statute, take a one-year limitations period under the language of West Virginia Code § 55–2–12(c). West Virginia Code § 55–7–8a, which addresses survivability and must be read in conjunction with West Virginia Code § 55–2–12, makes clear that "(f) Nothing contained in this section shall be construed to extend the time within which an action for any other tort shall be brought...." W.Va.Code § 55–7–8a(f). Therefore, unless a tort expressly falls within the classification of property damage, personal injury, or fraud or deceit, a one-year statute of limitations governs rather than a two-year period. *See Snodgrass*, 161 W.Va. at 594, 244 S.E.2d at 325 (stating that provisions of West Virginia Code § 55–7–8a(f) specifically limit the survivability of personal tort actions to those set out in subsection (a) of West Virginia Code § 55–7–8a(a)). Consequently, personal tort actions such as libel, defamation, false arrest, false imprisonment, and malicious prosecution take the one-year statute provided by West Virginia Code § 55–2–12(c) because they are excluded from statutory survivability under West Vir-

**10.** We explained in *Snodgrass,* that Code § 55–2–12 must be read in pari materia with Code § 55–7–8a since both statutes "relate to the same subject matter and were adopted as a part of a common plan." 161 W.Va. at 592–93, 244 S.E.2d at 324.

**11.** At common law, causes of action that survived the death of the property owner or the injured were "those in which the wrong complained of affected primarily property and property rights, and in which any injury to the person is incidental...." 1 Am.Jur.2d *Abatement, Survival, and Revival* § 52 (1994). In *Tice v. E.I. Du Pont De Nemours & Co.*, 144 W.Va. 24, 106

S.E.2d 107 (1958), this Court recognized the common law rule that actions for personal injuries other than those resulting in death did not survive the death of the tortfeasor. *Id.* at 29, 106 S.E.2d at 111. In direct response to the *Tice* decision, the Legislature amended West Virginia Code § 55–2–12 in 1959 to expressly provide for a two-year statute of limitations for personal injury claims that operated independent of any common law rules on survivability. *See Snodgrass,* 161 W.Va. at 592, 244 S.E.2d at 324.

**12.** *See supra* note 11.

ginia Code § 55–7–8a. *Rodgers,* 179 W.Va. at 640, 371 S.E.2d at 361.

With regard to the law of other states on the issue of applicable statute of limitations for an unfair settlement practices claim, Plaintiffs state:

> [A] survey of similar statutes and cases from other states provides little assistance. Most states have enacted an Unfair Settlement Practices Act similar to the West Virginia Act. The majority do not recognize either a statutory or implied cause of action.... Unfortunately, the survey of sister states provides little assistance in determining the appropriate limitation of actions.

Of those few states that recognize such a cause of action, the limitations period is written into the statute. *See, e.g.* Conn.Gen.Stat. Ann. § 42–110g(f) (West 1992) (setting forth a three-year limitations period); Montana Code Ann. § 33–18–242(7) (1997) (providing for two-year statute of limitations for first-party claims and one-year period for third-party claims).

In marked contrast to the *Davidson* decision, several federal district court judges have determined that violations of the Act are governed by the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c). In *Penix v. Nationwide Mutual Insurance Co.,* No. 2:95–0525, (S.D.W.Va. filed January 10, 1996), Judge Knapp, after eliminating a cause of action for unfair claims settlement practices from the realm of property damage and personal injuries, determined that "[a]s a claim arising under statute ... [that] clearly did not survive at common law[,]" such claim "falls within subsection (c) of Section 55–2–12 and is governed, therefore, by a one[-]year statute of limitations." Judge Stamp ruled similarly in *Klettner v. State Farm Mutual Automobile Insurance Co.,* No. 5: 97CV144 (N.D.W.Va. filed January 9, 1988).

The analysis employed by the courts in *Penix* and *Klettner* correctly applied the pro-

visions of West Virginia Code § 55–2–12. Because the Legislature chose to retain the concept that certain actions did not survive at common law through the language of West Virginia Code § 55–2–12(c) and to simultaneously insert fraud and deceit as additional actions which survive through Code § 55–7–8a(a),[13] survivability—either common law or statutory—still determines the applicable limitations periods for torts that fall outside subsections (a) and (b) of West Virginia Code § 55–2–12. *See Slack v. Kanawha County Hous. & Redevelopment Auth.,* 188 W.Va. 144, 148, 423 S.E.2d 547, 551 (1992) (holding that invasion of privacy is a personal action that takes the one-year limitations period under West Virginia Code § 55–2–12(c) because such action did not survive at common law and because such an action was not granted statutory survivability by West Virginia Code § 55–7–8a(a)). Given its recent statutory genesis, an unfair settlement practices claim clearly did not survive at common law and thus falls squarely into subdivision (c) of West Virginia Code § 55–2–12. *See, e.g., Allen v. Smith,* 179 W.Va. 360, 368 S.E.2d 924 (1988) (holding that a private tort cause of action exists for violation of West Virginia Code § 27–3–1 proscribing release of confidential information relating to mental patients and such action is governed by one-year statute of limitations set forth in West Virginia Code § 52–2–12(c)). Accordingly, we determine that claims involving unfair settlement practices that arise under the Unfair Trade Practices Act are governed by the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c).[14]

Having answered the certified question, this matter is dismissed from the docket of this Court.

Certified question answered; case dismissed.

---

**13.** West Virginia Code § 55–7–8a was first enacted in 1959 and our current version of West Virginia Code § 55–2–12 was amended in 1959.

**14.** No issue is presented to this court regarding when the Plaintiffs' unfair settlement claim began to accrue and we accordingly do not address

such issue. State Auto took the position that the last date upon which Plaintiffs could rely for an alleged violation of the Act was May 31, 1994, the date on which Plaintiffs petition for certiorari was denied by the United States Supreme Court.