**2022 UT App 4**

# THE UTAH COURT OF APPEALS

CAMERON PALMER,
Appellant,
*v.*
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,
Appellee.

Opinion
No. 20200568-CA
Filed January 13, 2022

Third District Court, Salt Lake Department
The Honorable Richard E. Mrazik
No. 180909114

Emily Adams, Cherise Bacalski, Sara Pfrommer, and
Eric Vogeler, Attorneys for Appellant

Mark L. Anderson and Jill L. Dunyon,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

ORME, Judge:

¶1      Appellant Cameron Palmer challenges the district court's ruling that the statute of limitations barred his underinsured motorist coverage claim against Appellee Allstate Fire and Casualty Insurance Company. We reverse.

BACKGROUND[1]

¶2      In March 2012, Palmer, who was insured by Allstate, was involved in an accident caused by another driver who was also insured by Allstate. Allstate agreed to pay the at-fault driver's policy's limit of $30,000 if Palmer would release his claims against the at-fault driver. On May 15, 2015,[2] Allstate issued a $30,000 check to Palmer's attorney and transmitted it to the attorney along with a general release of claims against the at-fault driver. Allstate instructed the attorney to hold the funds in trust "until the release had been properly executed by [Palmer]." The attorney deposited the check in his trust account on May 19, 2015. Palmer signed the release eight days later on May 27.

¶3      Palmer eventually sought to recover underinsured motorist (UIM) benefits under his own policy with Allstate. Palmer and Allstate were unable to reach a settlement on Palmer's UIM claim, and Palmer sent a letter to Allstate on May 24, 2018, demanding that the case be arbitrated. Allstate denied Palmer's arbitration demand, asserting that the applicable statute of limitations barred the demand because he was required to file it "within three years after the inception of the loss." *See* Utah Code Ann. § 31A-21-313(1)(a) (LexisNexis Supp.

---

1. "On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff. We recite the facts accordingly." *Peck v. State*, 2008 UT 39, ¶ 2, 191 P.3d 4 (quotation simplified).

2. There is some confusion about whether the check was issued and/or posted on May 14 or May 15, but because that discrepancy is inconsequential, we use May 15 in this opinion—the date favored by the parties in their appellate briefs.

2021).[3] Allstate explained that the "inception of the loss" is statutorily defined as "the date of the last liability policy payment." *See id.* § 31A-22-305.3(5). In Allstate's view, this was May 19, 2015, the day on which Palmer's attorney deposited the settlement check into the trust account—a date more than three years prior to Palmer's arbitration demand on May 24, 2018.

¶4      In response, Palmer filed a complaint in district court seeking declaratory relief from the court "[t]hat the term 'last policy payment' set forth in Utah Code Ann. § 31A-22-305.3(5) . . . means May 27, 2015, the date the liability settlement funds were authorized to be paid and disbursed to [Palmer] by Palmer's execution of the liability release[.]" Thus, Palmer asked the court to declare that his "election of arbitration of his UIM claim was timely" on May 24, 2018, because the statute of limitations did not run until three days later, on May 27.

¶5      In response, Allstate filed a motion to dismiss, reasserting its position that the statute of limitations barred Palmer's May 24 arbitration demand. In resisting the motion, Palmer argued that a "last liability policy payment" could be made only if "a settlement agreement [is] reached," which was not done until May 27, 2015, when he signed the release of claims.

¶6      The district court granted Allstate's motion to dismiss. In doing so, it stated:

> Because the funds were no longer in [Allstate's] possession or control once Palmer's counsel negotiated the settlement payment draft and deposited the funds into his trust account, the Court determines the date of the last (and only) liability policy payment is May 19, 2015. Before

---

3. Because the applicable provisions of the Utah Code in effect at the relevant time are identical to those currently in effect, we cite the current version of the code for convenience.

that date, the liability policy payment had not been made, as Allstate still had the ability to stop payment on the draft. But as of May 19, 2015, Allstate's money was now in Palmer's counsel's trust account, beyond the reach of Allstate. So the Court determines the latest date that could be considered as the "date of the last liability policy payment" in this case is May 19, 2015.

The Court is not persuaded by Palmer's position that the date of the last liability policy payment is affected by the parties' agreement regarding when Palmer's counsel was permitted to distribute the liability settlement payment funds to Palmer. If the Utah Legislature had intended inception of the loss in the UIM context to be triggered by the date of the insured's actual receipt of the liability payment funds, or by the date on which the insured has an unconditional right to distribution of the liability payment funds, the Legislature would have so stated. Rather, the plain language of Utah Code § 31A-22-305.3(5) defines inception of the loss in the UIM context as "the date of the last liability policy payment." And under the undisputed facts of this case, that date falls no later than May 19, 2015, which is more than three years before the date on which Palmer commenced an action in arbitration . . . with Allstate for payment of UIM benefits.

¶7     Palmer now appeals.

ISSUE AND STANDARD OF REVIEW

¶8     Palmer asserts that the district court erred in dismissing his complaint for declaratory relief on the ground that it was

barred by the statute of limitations. "We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275. "Also, we review the interpretation and application of a statute for correctness, granting no deference to the district court's legal conclusions." *Berneau v. Martino*, 2009 UT 87, ¶ 9, 223 P.3d 1128.

ANALYSIS

¶9 Palmer contends that "under the plain language of the UIM statute, the date of the 'last liability policy payment' was the date on which [he] satisfied Allstate's conditions for payment and not the date on which the settlement check was conditionally deposited in his attorney's trust account." The statute of limitations on a UIM claim is found in Utah Code section 31A-21-313(1)(a), which provides that "[a]n action on a written policy or contract of first party insurance shall be commenced within three years after the inception of the loss." Utah Code section 31A-22-305.3(5) in turn instructs that "[t]he inception of the loss under Subsection 31A-21-313(1) for underinsured motorist claims occurs upon the date of the last liability policy payment." Thus, this appeal hinges on a single question: Was the "date of the last liability policy payment" the date on which Palmer's attorney deposited the $30,000 check into the trust account—May 19, 2015—or was it the date on which Palmer signed the release—May 27, 2015—whereupon his attorney was authorized to disburse the proceeds to Palmer?[4]

---

4. To date, neither this court nor the Utah Supreme Court has interpreted the phrase "the date of the last liability policy payment." Utah Code Ann. § 31A-22-305.3(5) (LexisNexis Supp. 2021). Additionally, this approach to starting the statute of limitations based on the last payment by an insurer appears to be unique to Utah, as the parties have not directed us to any

(continued…)

(…continued)

other jurisdiction, nor are we aware of any, that employs such an approach. Rather, other jurisdictions utilize one of three other approaches in this context. In a majority of states, the statute of limitations on UIM and uninsured motorist claims begins to run on the date the insurer violates its contract by refusing to pay benefits. *See, e.g., Berkshire Mutual Ins. v. Burbank*, 664 N.E.2d 1188, 1190 (Mass. 1996) (holding that "the statute of limitations for commencing an action for underinsured or uninsured motorist benefits begins to run when the insurer violates the insurance contract" by refusing to pay benefits, and not on the date of the accident). *Accord Blutreich v. Liberty Mutual Ins.*, 826 P.2d 1167, 1171 (Ariz. Ct. App. 1991); *Allstate Ins. v. Spinelli*, 443 A.2d 1286, 1287 (Del. 1982); *Whitten v. Concord Gen. Mutual Ins.*, 647 A.2d 808, 810 (Me. 1994); *Lane v. Nationwide Mutual Ins.*, 582 A.2d 501, 507 (Md. 1990); *Jacobs v. Detroit Auto. Inter-Ins. Exch.*, 309 N.W.2d 627, 630 (Mich. Ct. App. 1981); *Metropolitan Prop. & Liab. Ins. v. Walker*, 620 A.2d 1020, 1022 (N.H. 1993); *Wille v. GEICO Cas. Co.*, 2000 OK 10, ¶¶ 10–11, 2 P.3d 888; *Vega v. Farmers Ins.*, 918 P.2d 95, 98 (Or. 1996), *superseded by statute on unrelated grounds as recognized in Farmers Ins. v. Conner*, 182 P.3d 878 (Or. Ct. App. 2008); *Webster v. Allstate Ins.*, 833 S.W.2d 747, 750 (Tex. App. 1992); *Safeco Ins. v. Barcom*, 773 P.2d 56, 60 (Wash. 1989); *Plumley v. May*, 434 S.E.2d 406, 411 (W. Va. 1993). On the other hand, a minority of states either start the statute of limitations from the date the accident occurred, *see, e.g., Green v. Selective Ins.*, 676 A.2d 1074, 1080 (N.J. 1996) ("[T]he statute of limitations on UM/UIM claims should run from the date of an accident."). *Accord Bayusik v. Nationwide Mutual Ins.*, 659 A.2d 1188, 1194 (Conn. 1995); *State Farm Mutual Auto. Ins. v. Kilbreath*, 419 So. 2d 632, 633 (Fla. 1982), or from the date the plaintiff has obtained a judgment against, or entered into a settlement with, the tortfeasor, *see, e.g., Oanes v. Allstate Ins.*, 617 N.W.2d 401, 406 (Minn. 2000) ("We instead adopt a third option for the time a UIM claim accrues and the statute of limitations begins to run. This option is the date of settlement with or judgment against

(continued…)

¶10 The statute does not define the phrase "the date of the last liability policy payment." *See* Utah Code Ann. § 31A-22-305.3(5) (LexisNexis Supp. 2021). "Where a statute does not provide an internal definition of a term, we interpret the statutory language according to the plain meaning of its text." *Scott v. Benson*, 2021 UT App 110, ¶ 29 (quotation simplified). And "when the words of a statute consist of common, daily, nontechnical speech, they are construed in accordance with the ordinary meaning such words would have to a reasonable person familiar with the usage and context of the language in question." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465 (quotation simplified). "A starting point for our assessment of ordinary meaning is the dictionary." *State v. Bagnes*, 2014 UT 4, ¶ 14, 322 P.3d 719. And in undertaking this analysis, "we presume that the legislature used each word advisedly." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (quotation simplified). Here, the words "last" and "payment" are the only words from the disputed phrase that are relevant on appeal.

¶11 The definition of "last" that is most in line with the text of the statute provides that the term means "following all the rest." *Last*, Merriam-Webster, https://www.merriam-webster.com/dictionary/last [https://perma.cc/AFU4-7JS4]. "Payment" is defined as a "[p]erformance of an obligation by the delivery of money . . . accepted in partial or full discharge of the obligation." *Payment*, Black's Law Dictionary (11th ed. 2019). Based on these definitions, the plain language of the phrase "the

_____

(…continued)

the tortfeasor."); *Register v. White*, 599 S.E.2d 549, 554–55 (N.C. 2004) (same). Thus, we have no authority from other jurisdictions to guide us. The United States District Court for the District of Utah has, however, recently dealt specifically with Utah's unique phraseology. *See Marriott v. Allstate Ins.*, No. 2:18-CV-00629, 2019 WL 7761582 (D. Utah Nov. 26, 2019). While that court's ruling is not binding on this court, we find its reasoning helpful. *See infra* ¶¶ 13–17.

date of the last liability policy payment" occurs when a party delivers money that is accepted in discharge of an obligation and it comes after all other payments. Thus, the crux of this appeal is whether Allstate's action of sending a check to Palmer's attorney on May 19, 2015, with the condition that Palmer sign the release before obtaining the funds, was therefore the delivery of money to Palmer in discharge of Allstate's insurance obligation and was therefore the payment "following all the rest." We conclude that it was not.

¶12 Allstate sent a check to Palmer's attorney with the condition that it not be disbursed to Palmer "until the release had been properly executed." The word "until" acted as a condition that Palmer had to satisfy to obtain the money. *See Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 1, 367 P.3d 994 ("Conditions . . . are events not certain to occur, but which must occur before either party has a duty to perform under the contract."). Had Palmer not signed the release, his attorney would have been required to remit the money to Allstate, even though the check had already been deposited into the attorney's trust account. Thus, the check being deposited into the trust account did not qualify as a "payment" because that act alone—the act of delivering the money to Palmer's attorney— did not discharge Allstate's obligation under the UIM policy. The delivery of the check was the first link in a chain of events that *might* have culminated in Allstate's obligation being discharged, but it was not *certain* that discharge would result because of the requirement that Palmer first sign the release. *Cf. Fitzgerald v. Corbett*, 793 P.2d 356, 359 (Utah 1990) ("A mere offer to pay generally does not constitute a valid tender."). Thus, the check could be considered an actual "payment" only after Palmer signed the release and thereby became entitled to receive the funds held in trust by his attorney.

¶13 There is some support for this determination in the United States District Court for the District of Utah's recent decision in *Marriott v. Allstate Insurance Co.*, No. 2:18-CV-00629, 2019 WL 7761582 (D. Utah Nov. 26, 2019), in which the court

dealt with similar facts to those before us. There, in 2011, the plaintiff, insured by Allstate, was involved in an accident with another driver, insured by an Allstate affiliate, who caused the accident. *Id.* at *1. In early December 2014, Allstate offered to settle the plaintiff's claim against the at-fault driver for that driver's policy limits. *Id.* The plaintiff's attorney accepted that offer on the plaintiff's behalf. *Id.* Allstate then "sent a formal memorialization of the settlement agreement to [the plaintiff's attorney] acknowledging the settlement amount and providing a proposed release of all claims . . . for [the plaintiff] to sign." *Id.* Allstate sent the check the next day, on December 12, 2014, and the plaintiff's attorney received both the release of claims to be signed by the plaintiff and the check "sometime thereafter." *Id.* The plaintiff then signed the release of claims approximately three months later, on March 17, 2015. *Id.* Allstate received the release on April 7, and the check was deposited into the attorney's trust account on April 13. *Id.* Nearly three years later, on March 16, 2018, the plaintiff initiated an action for UIM benefits against Allstate in the federal district court. *Id.*

¶14 The main issue before the district court was which date constituted "the date of the last liability policy payment." *Id.* at *2. Allstate asserted it was December 12, 2014, when it sent the settlement check. *Id.* The plaintiff, on the other hand, asserted it was on April 7, 2015, when Allstate received the plaintiff's executed release of claims because his attorney was required to hold the check in the trust account until the plaintiff signed the release. *Id.*

¶15 The district court determined that the date of the last liability policy payment occurred "on December 12, 2014 or, at the latest, when the check was received by [the plaintiff's] attorney," which was well before March 9, 2015. *Id.* at *3. It ruled that this was so because the "authorization of payment was not, as [the plaintiff] contends, conditioned on the return of the executed Release." *Id.* The court then opined:

> It is conceivable that an insurance company might condition the cashing of a check on the return of an executed release. An insurer could include language to that effect in its proposed release or settlement agreement, i.e.: "Payment will not be made, and no check may be deposited, until insurer has received an executed release of all claims from the insured." If an insurer using this language sent the insured a check before receiving a signed release, the "date of payment" would arguably be the date on which the insurer received the release. Here, however, no such language appears.

*Id.* The court then explained that while the plaintiff "was contractually obligated to sign the release, his performance had no bearing on the date of payment" because there was no "conditional language suggesting that [the plaintiff's] return of the executed release was anything other than an ordinary covenant" rather than a "condition precedent" to receiving the funds. *Id.*

¶16   While we are, of course, not bound by this decision, its logic is persuasive. Indeed, the case before us is the very case the federal district court envisioned when it opined that if an insurance company conditioned the payment on receiving a signed release, the date of the last liability policy payment would arguably be when the release was received because such a release would not be an "ordinary covenant" but a "condition precedent" to the payment.

¶17   "The distinction between covenants and conditions precedent is significant." *McArthur v. State Farm Mutual Auto. Ins.*, 2012 UT 22, ¶ 28, 274 P.3d 981. "A contractual covenant is a promise between the parties to the contract about their mutual obligations." *Id.* (quotation simplified). "Conditions precedent are different. A condition is an event, not certain to occur, which

must occur before performance under a contract becomes due." *Id.* ¶ 29 (quotation simplified). Here, Palmer's attorney was presented with both a check and a release of claims, and Palmer was informed that he could not obtain the funds unless and until he signed the release. Thus, execution of the release of claims was a condition precedent to Palmer receiving the funds, and only after the release was signed, and Palmer's attorney was at liberty to disburse the proceeds to Palmer, could the "last liability policy payment" occur. Had Palmer refused to sign the release, he would never have been entitled to receive the money, and at some point his attorney would have been duty-bound to return it to Allstate. Accordingly, no "payment" happened in this case until May 27, 2015, when Palmer satisfied the condition precedent by signing the release.

¶18    The principal rationale on which the district court relied to determine that the last liability policy payment occurred on May 19, 2015, was that "the funds were no longer in [Allstate's] possession or control once Palmer's counsel negotiated the settlement payment draft and deposited the funds into his trust account."[5] This was incorrect. While Palmer's attorney deposited

---

5. The district court also reasoned that had the Legislature "intended inception of the loss in the UIM context to be triggered by the date of the insured's actual receipt of the liability payment funds, or by the date on which the insured has an unconditional right to distribution of the liability payment funds, the Legislature would have so stated." But when interpreting a statute, simply stating that the Legislature could have been "more explicit" "is unhelpful" because "it will almost always be true that the legislature could have more clearly repudiated one party's preferred construction." *Craig v. Provo City*, 2016 UT 40, ¶ 39, 389 P.3d 423 (quotation simplified). Thus, "[t]he legislature's failure to speak [more] clearly merely frames the context of a problem of statutory interpretation for our courts" and "does not yield an answer to that problem," *see id.* ¶ 40, as the district court assumed here.

the funds to his trust account, Allstate still retained some control over the funds because it required a signed release before those funds could be disbursed, and Palmer's attorney would have been required to return the money to Allstate had Palmer not satisfied Allstate's condition. *Cf. B.T. Moran, Inc. v. First Sec. Corp.*, 24 P.2d 384, 387 (Utah 1933) (holding that an "offer may be withdrawn at any time before it has been accepted").

¶19    "[T]he date of the last liability policy payment" therefore occurred on May 27, 2015, when Palmer satisfied Allstate's condition and became entitled to receive the funds. Thus, the district court erred in determining that the three-year statute of limitations began to run on May 19, 2015, thereby precluding Palmer from submitting his arbitration demand on May 24, 2018.


CONCLUSION

¶20    The district court erred in ruling that the statute of limitations barred Palmer's arbitration demand and in granting Allstate's motion to dismiss. We therefore reverse and remand for further proceedings consistent with this opinion.

_____