PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1418

KELLIE M. BALLARD,

Plaintiff - Appellant,

v.

BANK OF AMERICA, N.A.,

Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, District Judge. (8:12-cv-03737-RWT)

Argued: September 20, 2013      Decided: October 30, 2013

Before MOTZ, SHEDD, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Thacker joined. Judge Shedd wrote a separate opinion concurring in the judgment.

**ARGUED:** Roger Charles Simmons, GORDON & SIMMONS, LLC, Frederick, Maryland, for Appellant. E. John Steren, OBER, KALER, GRIMES & SHRIVER, PC, Washington, D.C., for Appellee. **ON BRIEF:** Jodi Lynn Foss, GORDON & SIMMONS, LLC, Frederick, Maryland, for Appellant. Amy E. Garber, OBER, KALER, GRIMES & SHRIVER, PC, Washington, D.C., for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Kellie Ballard appeals from the judgment of the district court dismissing her federal and state Equal Credit Opportunity Act ("ECOA") claims, and her claims for unjust enrichment and a declaratory judgment. We affirm.

## I.

Kellie Ballard's husband, Michael Ballard, owns and operates FoodSwing, a food-packing company. In March 2008, he entered into an agreement with Bank of America ("the Bank") to obtain a loan for FoodSwing in the amount of $4,100,000. Although Mrs. Ballard assertedly plays no role in the ownership or operation of FoodSwing, Bank of America required her to sign the loan agreement as a guarantor. She guaranteed "full and complete payment" of the loan and waived "[a]ll rights of redemption" with respect to the property securing the loan.

In 2009, FoodSwing defaulted on the loan. Michael Ballard then entered into a modified loan agreement with Bank of America to restructure the debt. FoodSwing defaulted two more times -- once in 2010 and once in 2011. More debt restructuring agreements followed these defaults. As with the initial loan, Bank of America required that Mrs. Ballard guarantee each new agreement. These restructuring agreements contained a comprehensive waiver requiring Mr. and Mrs. Ballard to waive

"any and all" claims -- past, present, or future -- against Bank of America. In each agreement, Mr. and Mrs. Ballard acknowledged that they "actively and with full understanding" participated in negotiating the agreement "after consultation and review with their counsel."

Although counsel represented Mrs. Ballard at the time she signed all of the loan documents, she contends that her counsel operated under impermissible conflicts of interest. She alleges that she signed the loan agreements only at the insistence of her conflicted attorneys. (At oral argument, Mrs. Ballard's counsel also claimed that her husband misinformed her about the nature of the documents she signed.)

Among other assets, a home in Maryland and a winery in California secured the loans to FoodSwing. Mrs. Ballard co-owned these two properties with her husband. After the 2011 default, Bank of America recorded consensual liens on both properties.

In November 2012, Mrs. Ballard filed this action against Bank of America. She alleges that the Bank violated the federal and state ECOA by requiring her to serve as her husband's guarantor. She seeks equitable and injunctive relief for these asserted ECOA violations, asserts a claim for unjust enrichment, and seeks a declaratory judgment. The district court dismissed her complaint with prejudice, reasoning that she failed to state

3

a claim upon which relief can be granted and that, in any event, waiver and limitations barred her claims.

II.

We review dismissals for failure to state a claim de novo. United States ex rel. Nathan v. Takeda Pharm. N. America, Inc., 707 F.3d 451, 455 (4th Cir. 2013). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). We draw "reasonable inference[s]" in favor of the plaintiff. Id.

The Equal Credit Opportunity Act makes it unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of . . . marital status." 15 U.S.C. § 1691(a)(1) (2006). Specifically, ECOA regulations prohibit lenders from requiring a spouse's signature on a loan agreement when the applicant individually qualifies for the requested credit. 12 C.F.R. § 202.7(d)(1) (2013) (lenders may not "require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness"). Congress enacted this prohibition to eradicate credit discrimination against married

4

women, whom many creditors traditionally had refused to consider for individual credit.

Not every signature required of a borrower's spouse, however, constitutes credit discrimination under ECOA. Rather, the statutory scheme provides for several exceptions permitting lenders to obtain the signature of a borrower's spouse on a loan agreement.

First, and most obviously, ECOA regulations expressly authorize lenders to obtain the signature of a borrower's spouse if the borrower does not independently qualify for the loan. But lenders may obtain the spouse's signature only after determining that the borrower does not qualify "under the creditor's standards of creditworthiness for the amount and terms of the credit requested." Id.

Second, ECOA permits lenders to obtain the signature of a borrower's spouse who owns or co-owns the entity benefitting from the loan. Even if the spouse does not technically apply for the loan herself, she qualifies as a "de facto" joint applicant because she possesses an ownership stake in the business for which the loan is sought. Given that ECOA regulations expressly permit a lender to require a signature from a joint applicant spouse, see id., courts have found no ECOA violation where a lender requires a signature from a de facto joint applicant spouse. See Midlantic Nat'l Bank v.

5

Hansen, 48 F.3d 693, 700 (3d Cir. 1995) (because loans financed a company co-owned by the spouses, the wife "at the very least" was a de facto joint applicant who could be required to guarantee the loans); Riggs Nat'l Bank of D.C. v. Webster, 832 F. Supp. 147, 151 (D. Md. 1993) (because the loan was obtained to renovate a property owned by the borrower's wife, she was "de facto a joint applicant" who could be required to guarantee the loan). Thus, banks may treat the co-owner of a business as a joint applicant for a loan to that business -- even if the co-owner happens to be the primary applicant's spouse.

Third, when two spouses co-own property designated as collateral for a loan (as opposed to co-owning the entity seeking a loan), ECOA permits a lender to require the non-applicant spouse to sign the loan "for the purpose of creating a valid lien, passing clear title, waiving inchoate rights to property, or assigning earnings." 15 U.S.C. § 1691d(a) (2006). ECOA regulations clarify that, in an application for secured credit, "a creditor may require the signature of the applicant's spouse . . . on any instrument necessary, or reasonably believed by the creditor to be necessary, under applicable state law to make the property being offered as security available to satisfy the debt in the event of default." 12 C.F.R. § 202.7(d)(4). These provisions ensure that a lender can acquire collateral co-

owned by the borrower's spouse in the event that the borrower defaults.

III.

The parties primarily contest -- and the district court primarily addressed -- whether Bank of America violated ECOA. We therefore consider this question first.

A.

Mrs. Ballard contends that Bank of America violated ECOA by forcing her to guarantee the loan agreement without first evaluating her husband's independent creditworthiness.[1] She apparently concedes that it would have been permissible to require her signature for the limited purpose of relinquishing her rights "to property she co-owns with her husband" -- the Maryland home and the California winery. Appellant's Br. 19.

---

[1] Although Federal Reserve Board regulations (recently re-adopted by the Consumer Financial Protection Bureau) include guarantors within the definition of "applicants" with standing to bring an ECOA claim, 12 C.F.R. §§ 202.2(e) & 1002.2(e), Judge Posner has expressed doubt that "the statute can be stretched far enough to allow this interpretation." Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC, 476 F.3d 436, 441 (7th Cir. 2007). But no court has so held and, indeed, other courts have treated guarantors as applicants as the regulations provide. See Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28, 31 (3d Cir. 1995); Anderson v. United Fin. Co., 666 F.2d 1274, 1276 (9th Cir. 1982). Because resolution of this issue is not determinative given our disposition of this case, we will assume, without deciding, that guarantors do qualify as applicants for purposes of ECOA.

7

But she claims that ECOA prohibited Bank of America from requiring her to assume <u>unlimited</u> liability on the debt.

ECOA's text lends support to Mrs. Ballard's claim that Bank of America violated ECOA by requiring her to guarantee the FoodSwing loan. It is undisputed that Bank of America required Mrs. Ballard to execute an unlimited guarantee of the loan. This guarantee was therefore permissible only if it was subject to an exception to ECOA's general rule barring lenders from requiring a spousal signature. No such exception is apparent here.

First, the guarantee apparently cannot be justified on the ground that the Bank had concluded that Mr. Ballard was not creditworthy. This is so because Mrs. Ballard alleges in her complaint that Bank of America did not assess her husband's creditworthiness before requiring her to sign on the loan. In reviewing a grant of a motion to dismiss, we must assume the truth of this allegation.

Second, obtaining Mrs. Ballard's signature apparently cannot be justified on the ground that she co-owns the business benefitting from the loan. Mrs. Ballard alleges in her complaint that she is neither an owner nor a shareholder of FoodSwing. And so, again, we must assume the truth of this allegation at this stage of the litigation. Because spouses are "de facto joint applicants" only when they co-own the entity

benefitting from the loan, the Bank apparently could not require Mrs. Ballard to sign as a guarantor on the theory that she was a de facto joint applicant.

Finally, it does not appear that the unlimited guarantee can be justified on the ground that Mrs. Ballard co-owned two properties securing the loan. Although ECOA permits lenders to seek the signature of a spouse who co-owns collateral securing the loan, the plain language of the statute limits the effect of the spouse's signature in these circumstances to "creating a valid lien [or] passing clear title" to co-owned property. 15 U.S.C. § 1691d(a). ECOA's implementing regulations further reinforce that a co-owner spouse's obligation must be limited to "mak[ing] the property being offered as security available to satisfy the debt in the event of default." 12 C.F.R. § 202.7(d)(4). In other words, although ECOA permits lenders to require a borrower's spouse to relinquish her interest in co-owned collateral, it appears to prohibit lenders from demanding that a spouse guarantee the full loan without first appraising the borrower's creditworthiness. Any other reading would ignore the statute's clear limits on the permissible scope of a spouse's guarantee. Our case law supports this conclusion. See Riggs Nat'l Bank of D.C. v. Linch, 36 F.3d 370, 374 (4th Cir. 1994) (wife who co-owned collateral could be required to execute

9

an unlimited personal guarantee, but only because the lender first determined that her husband was not creditworthy).

                                    B.

Bank of America maintains, of course, that it did not violate ECOA by requiring Mrs. Ballard's guarantee. The Bank contends that a borrower's spouse becomes a de facto joint applicant merely by virtue of co-owning any of the collateral securing the loan. The Bank claims that Moran, 476 F.3d at 442, Hansen, 48 F.3d at 700, and Webster, 832 F. Supp. at 151, all hold that a spouse who co-owns any collateral can be required to provide an unlimited guarantee as a condition for the loan.

Those cases, however, do not sweep so broadly. In Hansen, 48 F.3d at 700, and Webster, 832 F. Supp. at 151, the courts grounded their conclusion that the plaintiff was a de facto joint applicant on the fact that she owned part or all of the entity for which the loan was sought. Although the reasoning in Moran was less clear, no ECOA violation occurred in that case because the plaintiff also co-owned one of the entities benefitting from the loan. See Appellant's Br. at 49, Moran, 476 F.3d 436 (Nos. 05-3656 & 05-3735). Accordingly, the lenders in all three cases complied with ECOA not because the guarantor spouse co-owned some property with the borrower, but because she owned or co-owned the property directly benefitting from the loan.

10

Treating the co-owner of a property as a joint applicant for a loan benefitting that property makes sense; repayment of the loan will often depend on business decisions made by the co-owners jointly. It makes less sense to treat a spouse as a joint applicant merely because she happens to co-own some assets with her applicant husband. Under the theory espoused by Bank of America, any time a borrower's spouse co-owns any property designated as collateral, no matter how minimal, the spouse could be required to assume unlimited liability on the borrower's debt. Such a construction would permit an unlimited spousal guarantee in almost every instance, and would seem to contravene the plain language and purpose of ECOA.

Accordingly, Bank of America well may have violated ECOA by requiring Mrs. Ballard to sign as an unlimited guarantor without first determining that her husband was not creditworthy. We need not, however, definitively resolve that question because Mrs. Ballard's claim fails for another reason -- she waived it.

IV.

The initial loan guarantee that Mrs. Ballard executed in March 2008 included a waiver of any claims against Bank of America for "punitive, exemplary or other non-compensatory damages." That waiver did not constitute a release of Mrs. Ballard's ECOA claims, for it did not forfeit her right to sue

11

Bank of America for actual damages or attorneys' fees. See 15 U.S.C. § 1691e(a), (d) (authorizing ECOA suits for actual damages and attorneys' fees). After FoodSwing's first default in 2009, however, Mrs. Ballard executed a series of four loan restructuring agreements. Each of these restructuring agreements expressly waived "any and all" claims by Mrs. Ballard against Bank of America in exchange for the Bank's waiver of FoodSwing's defaults.

A valid waiver can prevent a borrower from recovering under a federal statute.[2] A court will enforce a waiver unless it was obtained through intentional misconduct, Wartsila NSD N. America, Inc. v. Hill Int'l, Inc., 530 F.3d 269, 274 (3d Cir. 2008); Eaglehead Corp. v. Cambridge Capital Grp., Inc., 170 F. Supp. 2d 552, 559 n.7 (D. Md. 2001); was not knowing and voluntary, Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15 (1974); or would "thwart the legislative policy which [the statute] was designed to effectuate," Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704 (1945).

---

[2] Depending on the statute at issue, a court will apply either federal or state law to determine the validity of a waiver of federal statutory rights. See Kendall v. City of Chesapeake, 174 F.3d 437, 441 n.1 (4th Cir. 1999). We have not yet determined whether we evaluate ECOA waivers under the federal totality-of-the-circumstances approach or the state contract-law approach. We need not here resolve that question because the waiver of "any and all" claims is valid under both approaches.

12

Mrs. Ballard contends that enforcing sweeping waivers like the ones she signed as part of the restructuring would fatally undermine the purpose of ECOA. She maintains that if lenders could, by obtaining a single signature, commit an ECOA violation and simultaneously induce borrowers to waive their ECOA rights, lenders could engage in credit discrimination with impunity. For this reason, she argues that the waivers she signed at Bank of America's insistence are unenforceable.

Her argument might well have merit if the Bank in fact had required her to waive her ECOA rights as a precondition for obtaining the loan. In the analogous context of Title VII, federal law prohibits employers from conditioning an offer of employment upon an applicant's waiver of nondiscrimination rights. See Gardner-Denver, 415 U.S. at 51 ("[W]e think it clear that there can be no prospective waiver of an employee's rights under Title VII."). When enacting ECOA, it seems unlikely that Congress intended to permit lenders to predicate the extension of credit upon a borrower's initial willingness to endure discriminatory treatment.

But Bank of America did not require Mrs. Ballard to execute a prospective waiver of her ECOA rights. Instead, the Bank obtained Mrs. Ballard's waiver only in exchange for its agreement to restructure the loan after FoodSwing defaulted. Thus, Bank of America agreed to work with the Ballards to

13

resolve FoodSwing's defaults, but only if the Ballards consented to forfeit all past, present, and future claims against the Bank.

Conditioning a favorable loan restructuring upon a waiver of ECOA rights seems to us analogous to the common employment practice of conditioning a favorable severance agreement upon a waiver of Title VII rights.  See, e.g., Gardner-Denver, 415 U.S. at 52 ("presumably an employee may waive his cause of action under Title VII as part of a voluntary settlement"); Cassiday v. Greenhorne & O'Mara, Inc., 220 F. Supp. 2d 488, 494 (D. Md. 2002) (upholding Title VII release agreement made in exchange for ten weeks of severance pay).  An ECOA waiver obtained in exchange for a loan restructuring differs significantly from one required as a precondition for a loan.  The latter would permit a bank to circumvent ECOA's clear dictates.  The former merely affords both parties a negotiated benefit:  a means of escaping default for the borrower, and protection against future claims for the lender.  In fact, refusing to enforce waivers attendant to refinancing could well harm borrowers like the Ballards, since a lender would be reluctant to work with a borrower to restructure a loan after a default if the lender knew that a waiver would not be enforced.

In exchange for Bank of America's restructuring of the loan, Mrs. Ballard executed waivers of all claims against the

14

Bank on four separate occasions over a period of more than two years.  Further, she confirmed that she "actively and with full understanding" participated in negotiating each agreement "after consultation and review with [her] counsel."[3]  In doing so, Mrs. Ballard waived her right to bring an action against Bank of America, and thus her state and federal ECOA claims must fail.

We similarly conclude that Mrs. Ballard waived her claims for unjust enrichment and for declaratory relief.  Because we deem her claims waived, we need not address whether these claims were also time-barred.

V.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[3] Mrs. Ballard alleges that her attorneys' asserted conflicts of interest rendered her waivers involuntary.  But she fails to plead facts giving rise to a plausible inference that any such conflicts prompted her repeated decisions to waive her ECOA rights.  See Iqbal, 556 U.S. at 678.

SHEDD, Circuit Judge, concurring in the judgment:

Because I agree that Kellie Ballard waived any claim she had under the Equal Credit Opportunity Act ("ECOA"), I concur in the judgment reached by the court.

I do not join Part III of the majority opinion, which—as even the majority concedes—is unnecessary to deciding the appeal. See Leiba v. Holder, 699 F.3d 346, 352 (4th Cir. 2012) (noting dicta is "non-binding"). In fact, contrary to the majority's suggestion, I believe that ECOA does not cover a "guarantor" under the circumstances presented here, where Bank of America is not discriminating against Ballard on account of her marital status; rather, the Bank is requiring more of Ballard on account of her joint-ownership of property and her wealth. Therefore, the Bank's actions are "sound commercial practice unrelated to any stereotypical view of a wife's role" and do not violate ECOA. Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC, 476 F.3d 436, 442 (7th Cir. 2007).