**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1788**

AUDREY DIANNE KENNEY,

Plaintiff – Appellant,

v.

THE INDEPENDENT ORDER OF FORESTERS,

Defendant - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, District Judge. (3:12-cv-00123-GMG)

Argued: December 11, 2013          Decided: March 10, 2014

Before AGEE, KEENAN, and FLOYD, Circuit Judges.

Reversed and remanded by published opinion. Judge Floyd wrote the opinion, in which Judge Agee and Judge Keenan joined.

**ARGUED**: Don C.A. Parker, SPILMAN, THOMAS & BATTLE, PLLC, Charleston, West Virginia, for Appellant. Robert Lawrence Massie, NELSON MULLINS RILEY & SCARBOROUGH LLP, Huntington, West Virginia, for Appellee. **ON BRIEF**: Glen A. Murphy, SPILMAN, THOMAS & BATTLE, PLLC, Charleston, West Virginia, for Appellant. S. Taylor Hood, NELSON MULLINS RILEY & SCARBOROUGH LLP, Huntington, West Virginia, for Appellee.

FLOYD, Circuit Judge:

At least three times during the past two decades, federal courts in our Circuit have called upon West Virginia's highest court to answer certified questions regarding the West Virginia Unfair Trade Practices Act (WVUTPA). Each time, the Supreme Court of Appeals of West Virginia determined that actions pursuant to the WVUTPA sound in tort and not in contract. Taylor v. Nationwide Mut. Ins. Co., 589 S.E.2d 55 (W. Va. 2003); Wilt v. State Auto. Mut. Ins. Co., 506 S.E.2d 608 (W. Va. 1998); Poling v. Motorists Mut. Ins. Co., 450 S.E.2d 635 (W. Va. 1994).[1] This Court, too, has decided a case under that same framework, albeit in an unpublished opinion. Yost v. Travelers Ins. Co., 181 F.3d 95 (4th Cir. 1999) (unpublished table decision). In view of the want of published authority from this Court and the frequency with which the WVUTPA is litigated in federal court, we take this opportunity to clarify the law for district courts, unless and until the Supreme Court of Appeals of West Virginia rules to the contrary.

For the reasons that follow, we hold that actions brought pursuant to the WVUTPA sound in tort and not in contract. We further hold that West Virginia law governs the underlying

---

[1] Each of the cited cases were before the Supreme Court of Appeals of West Virginia on certification from the U.S. District Court for the Northern District of West Virginia.

2

lawsuit and that the complaint states a claim upon which relief can be granted. Accordingly, we reverse the district court's dismissal of the complaint and remand for further proceedings.

I.

Audrey Kenney's husband, Ronald Kenney, passed away on September 19, 2011, leaving Mrs. Kenney as the sole beneficiary of a life-insurance policy (the "policy") issued by The Independent Order of Foresters (IOF), a Canadian corporation. At the time of Mr. Kenney's passing in 2011, the Kenneys were residents of West Virginia and had resided there since 2003. At the time that IOF issued the policy to Mr. Kenney in 1984, however, the Kenneys resided in Virginia. The policy contains a choice-of-law provision that states as follows: "The rights or obligations of the member or anyone rightfully claiming under this certificate will be governed by the laws of the State in which this certificate is delivered."

On September 21, 2011, Mrs. Kenney filed a claim with IOF to collect the policy benefits, which she believed to be $130,000; IOF, however, responded that the policy was worth only $80,000. In fact, although the policy was worth only $80,000 when Mr. Kenney took out the policy in 1984, Mr. Kenney subsequently applied for and received a $50,000 increase in coverage in 1994.

3

When IOF refused to pay $130,000 to Mrs. Kenney, she filed a complaint with the West Virginia Office of the Insurance Commissioner (the "Commissioner") on November 1, 2011. IOF responded to Mrs. Kenney's complaint on or around December 7, 2011, and maintained that the policy was worth only $80,000. On June 27, 2012, the Commissioner scheduled an administrative hearing to be held on August 1, 2012, regarding Mrs. Kenney's claim. Then, on July 20, 2012—nearly ten months after Mrs. Kenney first contacted IOF and just twelve days before the administrative hearing was scheduled to take place—IOF reversed course and agreed to pay $130,000 to Mrs. Kenney. Without further explanation, IOF provided the following reasoning for the sudden departure from its prior position on Mrs. Kenney's claim: "There are some inconsistencies within the file that lead us to the conclusion that Mr. Kenney would have assumed the face amount of the insurance certificate . . . at the increased coverage amount of $130,000. Based on this information, we will honour the death claim for that amount."[2] In its brief on appeal, IOF now reveals that Mr. Kenney allegedly "failed to

---

[2] We quote from Mrs. Kenney's opening brief and not the original letter sent from IOF to Mrs. Kenney, as it appears that the letter was not included in the Joint Appendix. In answering Mrs. Kenney's complaint—which recites an only slightly different version of the IOF letter quoted above—IOF did not deny the contents of the letter as set forth by Mrs. Kenney, but instead stated that "the letter referenced speaks for itself."

sign and return the offer form before its expiration date," and thus the offer for the increase in coverage had lapsed. This explanation, however, was never provided to Mrs. Kenney during the nearly year-long period that she was denied the benefit of the increased coverage.

Mrs. Kenney sued IOF in West Virginia state court on September 19, 2012, pursuant to the WVUTPA. Specifically, Mrs. Kenney acknowledged in her complaint that she "substantially prevailed in obtaining the coverage to which she was always lawfully entitled"; she alleged, however, that IOF's "conduct . . . in connection with its handling" of her claim constituted an unlawful settlement practice prohibited by the WVUTPA. See, e.g., W. Va. Code § 33-11-4(9)(f) (unlawful to "[n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"). IOF removed the case to the district court below and thereafter moved to dismiss for failure to state a claim upon which relief can be granted. The district court granted IOF's motion to dismiss and Mrs. Kenney appealed.[3] This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[3] Prior to appealing, Mrs. Kenny moved pursuant to Federal Rules of Civil Procedure 59 and 60 to, inter alia, correct certain factual inaccuracies recited by the district court in the memorandum opinion granting IOF's motion to dismiss. These

II.

This appeal presents three issues that we must address in series. First, whether Mrs. Kenney's lawsuit pursuant to the WVUTPA sounds in tort or in contract. In re Bankers Trust Co., 752 F.2d 874, 881 (3d Cir. 1984) ("The initial step in any choice of law analysis involves the characterization of the subject matter of or the issues in the case (e.g., tort or contract) and of the nature of each issue and whether it raises a problem of procedural or substantive law." (citing E. Scoles & P. Hay, Conflict of Laws 50–51 (1984)). Second, whether West Virginia law or Virginia law governs the outcome of the suit pursuant to West Virginia's choice-of-law rules. See Acme Circus Operating Co. v. Kuperstock, 711 F.2d 1538, 1540 (11th Cir. 1983). And finally, whether the complaint's factual allegations sufficiently state a claim upon which relief can be granted. This Court reviews de novo the district court's dismissal of a complaint for failure to state a claim pursuant

---

inaccuracies pertained primarily to the length of time that the Kenneys resided in West Virginia prior to Mr. Kenney's passing. The district court granted Mrs. Kenney's motion and subsequently issued an amended memorandum opinion and order that dismissed Mrs. Kenney's complaint. This amended memorandum and order is the order on appeal, and it contains the same substantive legal reasoning for dismissal as the district court's first order granting IOF's motion to dismiss.

to Federal Rule of Civil Procedure 12(b)(6). Ballard v. Bank of Am., N.A., 734 F.3d 308, 310 (4th Cir. 2013).

A.

When hearing a case on appeal for which federal subject matter jurisdiction was proper in the district court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), this Court applies the choice-of-law rules of the state of the district court below, Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 599-600 (4th Cir. 2004)—in this case, West Virginia. The proper choice-of-law analysis in West Virginia varies depending on how a claim is characterized, e.g., as a tort claim or as a contract claim. Choice of law in contracts cases is governed by the rule of lex loci contractus, see Johnson v. Neal, 418 S.E.2d 349, 351-52 (W. Va. 1992), and choice of law in torts cases is generally governed by the rule of lex loci delicti, see Vest v. St. Albans Psychiatric Hosp., Inc., 387 SE.2d 282, 283 (W. Va. 1989).

The district court did not take a position on whether Mrs. Kenney's WVUTPA claim sounds in tort or in contract because it concluded that Virginia law applied in either case. Similarly, IOF contends that characterization of the WVUTPA claim as either a tort claim or a contract claim is "wholly irrelevant" because "the result is the same under both analyses." Because we are

7

firm in our conviction that Mrs. Kenney's WVUTPA claim sounds in tort, as explained in detail below, it is unnecessary to conduct a contracts analysis. That being said, we are reluctant to agree with IOF that the applicable law would be the same under both analyses based on the choice-of-law provision contained within the policy.

IOF cites to several nonbinding federal cases that are split as to whether WVUTPA claims are properly characterized as contract or tort claims. See, e.g., Yost, 181 F.3d 95 (stating that duties arising under the WVUTPA are "quasi-tort, extra-contractual," but applying choice-of-law analysis for a tort claim); Pen Coal Corp. v. William H. McGee & Co., 903 F. Supp. 980, 983 (S.D. W. Va. 1995) (characterizing bad-faith and WVUTPA claims as "part-contract and part-tort," but applying choice-of-law analysis for a contract claim). Mrs. Kenney, on the other hand, cites to West Virginia state cases for the proposition that WVUTPA claims sound in tort. See, e.g., Wilt, 506 S.E.2d at 609 (characterizing a violation of the WVUTPA as "tortious conduct" (quoting Poling, 450 S.E.2d at 638) (internal quotation marks omitted)). Although Mrs. Kenney's WVUTPA claim would not exist but-for the policy, her claim is not predicated on the terms of the policy itself; rather, Mrs. Kenney's complaint makes clear that her cause of action stems from IOF's allegedly

8

bad-faith "handling" of her claim for proceeds on the policy. This distinction is important.

The Supreme Court of Appeals of West Virginia explained the distinction noted above in Wilt. There, injured plaintiffs sued the defendant-insurer in federal court pursuant to the WVUTPA for unfair settlement practices after they were involved in an automobile accident. Id. at 609. The district court then asked the Supreme Court of Appeals of West Virginia to determine the proper statute of limitations applicable to the plaintiffs' claim—one year (for torts) or ten years (for written contracts). Id. In concluding that the plaintiffs' WVUTPA claim sounded in tort, the Wilt court contrasted the facts before it with the facts of Plumley v. May, 434 S.E.2d 406 (W. Va. 1993):

> In Plumley, this Court held that a claim by an insured to recover underinsurance benefits from his/her insurance carrier is governed by the statute of limitations applicable to contract actions. That action, as opposed to the [Plaintiffs'] pending claim . . . , involved the direct attempt by an insured to recover policy benefits from the carrier with whom he/she entered into a contract for underinsurance. In contrast to the instant case that was brought to recover damages for unfair settlement practices, Plumley was a direct suit against the insurer to obtain insurance benefits. Given this critical distinction, Plumley is clearly inapposite authority for Plaintiffs' contention that unfair settlement claims are contractual in origin.

9

_Wilt_, 506 S.E.2d at 609 (emphasis added) (footnote omitted) (citation omitted).

The Supreme Court of Appeals of West Virginia employed the same reasoning used in _Wilt_ in the analogous case of _Hall v. Nichols_, 400 S.E.2d 901 (W. Va. 1990). In _Hall_, the appellants sued their attorney for legal malpractice, and the trial court dismissed the action as time-barred based on the statute of limitations applicable to torts, as opposed to contracts. _Id._ at 902–03. Despite recognizing that legal-malpractice claims sound in both tort and contract, the appeals court affirmed the lower court and also characterized the action as one in tort. Specifically, the court noted that, "[n]otwithstanding the inclusion of the term 'contractual' in the amended complaint, the essence of the appellants' cause of action is various breaches of duties implied by _law_ and not by contract." _Id._ at 904. The _Hall_ court employed (and quoted in its entirety) the reasoning from _Pancake House, Inc. v. Redmond_, 716 P.2d 575 (Kan. 1986), which states:

> Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client _and not of the contract itself_, the action is in tort.

10

Id. at 578 (emphasis added); see Hall, 400 S.E.2d at 904 ("Only when the breach pertains specifically to the 'terms of the contract without any reference to the legal duties imposed by law upon the [attorney/client] relationship . . .' is the cause of action contractual in nature." (alterations in original) (quoting Redmond, 716 P.2d at 578)).

Here, it is uncontested that Mrs. Kenney's claim does not directly involve the policy terms or benefits; as noted above, Mrs. Kenney conceded in her complaint that she "substantially prevailed in obtaining the coverage to which she was always lawfully entitled." Rather, like in Wilt and Hall, Mrs. Kenney's lawsuit is based on IOF's allegedly unlawful "conduct . . . in connection with its handling" of her claim. In other words, notwithstanding the repeated references to the policy (a contract) in the complaint, the "essential claim" underlying Mrs. Kenney's lawsuit is IOF's allegedly tortious conduct. See Hall, 400 S.E.2d at 904 (quoting Redmond, 716 P.2d at 578) (internal quotation marks omitted).

We can further reason that Mrs. Kenney's action is one in tort—as opposed to contract—based on the type of damages available under the WVUTPA and the type of relief prayed for in the complaint. The Wilt court noted that a successful plaintiff suing pursuant to the WVUTPA may recover attorney's fees and punitive damages and, "[because] punitive damages, as a rule,

11

are not available in contract cases, the damages awarded in connection with a violation of the [WVUTPA] are clearly not typical of damages awarded in contract cases." 506 S.E.2d at 610 (citation omitted). Here, Mrs. Kenney seeks, among other relief, punitive damages and attorneys' fees and costs. Notably, however, she does not seek damages based on the terms of the policy itself, but instead references the policy only when describing the damages that she incurred "as a result of [IOF]'s improper refusal to honor her claim."

For the foregoing reasons, we hold that Mrs. Kenney's WVUTPA claim sounds in tort and not in contract. We now proceed to determine which state's laws apply to the substantive tort claim.

B.

The district court, when it assumed arguendo that Mrs. Kenney's claim sounds in tort, employed the Restatement (Second) of Conflict of Laws ("Restatement") choice-of-law approach and concluded that Virginia law applies. The parties dispute this result: Mrs. Kenney argues that the district court erred by not using the lex loci delicti choice-of-law approach and that West Virginia courts usually apply; IOF, on the other hand, contends that the district court was correct in both its methodology and conclusion. Both parties are justified in their positions: as

12

noted above, West Virginia traditionally applies the lex loci delicti approach to torts, see Vest, 387 SE.2d at 283, but has in certain circumstances shown a willingness to apply the Restatement approach "to resolve particularly thorny conflicts problems," e.g., Oakes v. Oxygen Therapy Servs., 363 S.E.2d 130, 131–32 (W. Va. 1987).

Regardless, as the proper choice-of-law approach is an issue of state law and, as we explain below, the outcome is the same under either approach, this Court need not determine which approach West Virginia courts would apply here. See Chawla v. Transam. Occidental Life Ins. Co., 440 F.3d 639, 648 (4th Cir. 2006) ("[C]ourts should avoid deciding more than is necessary to resolve a specific case."). Rather, we prefer to leave it up to West Virginia courts to develop West Virginia's law in this fact-intensive area. For the reasons set forth below, we hold that West Virginia law applies pursuant to the lex loci delicti approach and the Restatement approach.

1.

Under the lex loci delicti choice-of-law approach, courts apply the "law of the place of the wrong." Although conduct that causes harm can occur in one state and the resulting injury to a plaintiff can occur in another state, "the substantive rights between the parties are determined by the law of the

13

place of injury." West Virginia ex rel. Chemtall Inc. v. Madden, 607 S.E.2d 772, 779–80 (W. Va. 2004).

Here, IOF asserts that the effects of its allegedly unlawful conduct (and thus Mrs. Kenney's injury) would have been felt by Mrs. Kenney in Virginia, as the state where the policy was issued and where Mr. Kenney applied for the $50,000 increase in coverage. This argument rings hollow. The Kenneys moved from Virginia to West Virginia in 2003 and lived there continuously until Mr. Kenney passed away in 2011. Mrs. Kenney filed her claim on the policy with IOF from West Virginia and remains a West Virginia resident. Accordingly, insofar as Mrs. Kenney's cause of action stems from IOF's handling of her claim on the policy and she was a West Virginia resident at all times during resolution of her claim—on September 21, 2011, when she filed the claim with IOF; on November 1, 2011, when she filed a complaint with the Commissioner; and on July 20, 2012, when IOF agreed to pay to Mrs. Kenney the full $130,000—the injury to Mrs. Kenney undoubtedly occurred in West Virginia, not Virginia. See Yost, 181 F.3d 95 (concluding that "the worry, annoyance, and economic hardship of the delay in receiving compensation" (i.e., the injury) in an unfair-settlement claim is suffered in the state where the plaintiff resides).

Accordingly, we hold that West Virginia law applies to Mrs. Kenney's claim pursuant to the lex loci delicti choice-of-law

14

approach. We turn now to the Restatement choice-of-law approach that the district court employed.

2.

Section 145(1) of the Restatement provides as follows: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6" (which we explain below). Section 145(2) then lists four contacts to consider when determining the most significant relationship: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2) (1971).

As determined above in our analysis of the lex loci delicti approach, contact (a) points to West Virginia as the state where the injury to Mrs. Kenney occurred. As to contact (b), despite IOF's contention that "the alleged misrepresentations . . . took place in Virginia," the letter denying the full benefit of the

policy to Mrs. Kenney was sent (presumably) from IOF's Toronto, Canada office.[4]  As to contact (c), Mrs. Kenney is currently a West Virginia resident and IOF is headquartered in Canada.  As to contact (d), even though the relationship between Mr. Kenney and IOF began in Virginia when he first took the policy out in 1984 and later applied for the increase in coverage in 1994, the relationship between Mrs. Kenney—who is the party to the lawsuit—and IOF is centered in West Virginia, where Mrs. Kenney sought to collect, and was denied, policy benefits.  In sum, none of the contacts point to Virginia, and three of the four contacts point to West Virginia, with the fourth contact being split between Canada and West Virginia (an outcome that we would expect in a diversity suit).

As stated in section 145(1), the section 145(2) contacts must be analyzed against several factors set forth in section 6, which, inter alia, include: "the relevant policies of the forum"; "the relevant policies of other interested states and

---

[4] As previously noted, the parties did not include in the Joint Appendix copies of the letters from IOF to Mrs. Kenney first asserting that the policy was worth only $80,000 and then subsequently agreeing that Mrs. Kenney should receive $130,000. See supra note 2.  IOF concedes, however, that "[t]he adjusting of Mrs. Kenney's claim occurred mostly in [IOF's] Toronto, Canada office," and there is nothing in the record to indicate that IOF sent letters to Mrs. Kenney from Virginia or otherwise resolved her claim on the policy from Virginia.  We also note that neither of the parties has advocated for this Court to apply Canadian law.

16

the relative interests of those states in the determination of the particular issue"; "the protection of justified expectations"; and "the basic policies underlying the particular field of law." See Yost, 181 F.3d 95 (quoting Restatement (Second) of Conflict of Laws § 6(2)(b)–(e) (1971)) (internal quotation marks omitted) (listing the foregoing factors as the "meat of the Restatement test"). IOF argues that, based on Oakes, the section 6 factors lead to applying Virginia law. In Oakes, the plaintiff, a West Virginia resident, worked for a Maryland company pursuant to an employment contract that designated that Maryland law would govern. 363 S.E.2d at 130–31. The plaintiff was injured on the job in Maryland, filed a Maryland worker's compensation claim, and was subsequently fired. Id. at 131. The plaintiff then sued his former employer in West Virginia state court for retaliatory discharge and argued that, because he was a patient at a West Virginia hospital when he received the news of his discharge, the tort of retaliatory discharge occurred in West Virginia and therefore West Virginia law should apply. See id. The Supreme Court of Appeals of West Virginia applied the Restatement choice-of-law approach and determined that Maryland law applied. In considering the section 6 factors, the Oakes court paid particular attention to the "the protection of justified expectations" factor:

17

> The parties specifically agreed in their contract that the employment relationship would be governed by the laws of the State of Maryland. It is mere happenstance that the [plaintiff] was in a West Virginia hospital when he received news of the termination of his employment. [Plaintiff]'s claim for "retaliatory discharge" arises from his filing a Maryland workers' compensation claim and not a West Virginia workers' compensation claim.

Id. at 132. Importantly, the court subsequently stated that, "Had [the plaintiff] filed a West Virginia workers' compensation claim, the criteri[on] of § 6[(2)](b), namely, the relevant policies of the forum, would have become operative." Id.

In contrast to the plaintiff in Oakes, who filed a claim in the nonforum state, Mrs. Kenney filed a claim with the Commissioner in West Virginia—not an analogous entity in Virginia. Thus, the relevant policies of West Virginia are operative, and its public policy should be "vindicated." See id. It is well settled that West Virginia law, and the WVUTPA specifically, allows plaintiffs to recover for unfair settlement practices independent of any claim on a policy or contract. See, e.g., Taylor, 589 S.E.2d at 59-60 (citing Jenkins v. J.C. Penney Cas. Ins. Co., 280 S.E.2d 252 (W. Va. 1981), overruled on other grounds, State ex rel. State Farm Fire & Cas. Co. v. Madden, 451 S.E.2d 721 (W. Va. 1994)) (insurance claims adjuster with whom the plaintiff had no contract may be held personally liable, independent from insurer, pursuant to the WVUTPA); Wilt,

18

506 S.E.2d at 609 (analyzing plaintiffs' WVUTPA claim against insurer where personal-injury award had already been paid following injury). By contrast, courts that have interpreted Virginia's analogous statute—Virginia Code section 38.2-209—have declined to recognize a separate cause of action in tort for bad-faith dealing over an insurance contract. See, e.g., A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 676 (4th Cir. 1986); Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co., No. 3:08-CV-233, 2008 WL 2857191, at *5 (E.D. Va. July 21, 2008) (citing U.S. Airways, Inc. v. Commonwealth Ins. Co., No. 03-587, 2004 WL 1094684, at *9 (Va. Cir. Ct. May 14, 2004)); see also Taylor, 589 S.E.2d at 60 n.10 ("Unlike West Virginia, the majority of states do not recognize a right to bring a private cause of action under their unfair claim settlement practices statutes.").

IOF argues that "[t]he mere fact that Virginia's laws may differ slightly from, or be less favorable [to Mrs. Kenney] than, West Virginia's law does not support a refusal to apply Virginia law in this case." Aside from the fact that not a single section 145(2) contact points to Virginia—thus rendering the section 6 factor regarding "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue" a nullity—the difference between West Virginia's law and Virginia's law is

19

substantial and a far cry from trivial: one state's law allows Mrs. Kenney's cause of action to proceed and the other state's law does not.

West Virginia courts "have long recognized that comity does not require the application of the substantive law of a foreign state when that law contravenes the public policy of [West Virginia]." Paul v. Nat'l Life, 352 S.E.2d 550, 556 (W. Va. 1986) (reversing, on public policy grounds, the lower court's decision to apply Indiana's law as the law of the place of injury because it conflicted with West Virginia's law pertaining to the same subject matter); see Yost, 181 F.3d 95 (stating the following when analyzing the basic policies in the relevant field of law: "The purpose of laws like WVUTPA is to ensure fair play by insurance companies. . . . [T]he character of such laws is protectionist. In other words, West Virginia's law is designed as it is in order to protect the citizens of West Virginia." (citing Poling, 450 S.E.2d at 637)). Accordingly, even assuming that the majority of the section 145(2) contacts point to Virginia law—which, as analyzed above, they do not—West Virginia's favoritism toward laws that align with its own public policy trumps any comity to Virginia's law. See Paul, 352 S.E.2d at 556.

For the reasons set forth above, we hold that West Virginia law applies to Mrs. Kenney's claim pursuant to the Restatement

choice-of-law approach.  The district court therefore erred in determining that Virginia law applies.

C.

Finally, we consider whether Mrs. Kenney's complaint states a claim upon which relief can be granted pursuant to West Virginia law.  See Fed. R. Civ. P. 12(b)(6).  We note that IOF's motion to dismiss, its opposition to Mrs. Kenney's motion for reconsideration, and its brief on appeal, each focus nearly exclusively on resolving the issue of which state's law applies and on arguing that Mrs. Kenney's complaint failed to state a claim pursuant to Virginia law.  Indeed, IOF's motion to dismiss is captioned, "Defendant's Motion to Dismiss Based on Virginia Law."  (Emphasis added.)  IOF never contends, however, that Mrs. Kenney's complaint would also fail to state a claim upon which relief can be granted should West Virginia law apply; consequently, IOF waived any such argument.  See Mayfield v. Nat'l Assoc. for Stock Car Auto Racing, Inc., 674 F.3d 369, 376-77 (4th Cir. 2012).

Insofar as the Supreme Court of Appeals of West Virginia has previously entertained questions regarding an action brought pursuant to the WVUTPA against an insurer subsequent to settlement, where the cause of action was limited to "unfair settlement practices," see Wilt, 506 S.E.2d at 609, we hold that

21

Mrs. Kenney's complaint therefore states a claim upon which relief can be granted should she prevail on the merits. Accordingly, we reverse the district court's dismissal of the complaint.

## III.

For the reasons set forth above, we reverse the district court's dismissal of Mrs. Kenney's complaint and remand this case for further proceedings.

<u>REVERSED AND REMANDED</u>