RREF BB Acquisitions, LLC v. MAS Props., LLC, 2015 NCBC 105.

STATE OF NORTH CAROLINA

COUNTY OF BRUNSWICK

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 193

RREF BB ACQUISITIONS, LLC,
              Plaintiff

       v.

MAS PROPERTIES, L.L.C. a/k/a MAS
PROPERTIES LLC; MARK A. SAUNDERS
and SIBYL H. SAUNDERS,
          Defendants/Third-Party
          Plaintiffs

       v.

BRANCH BANKING AND TRUST
COMPANY,
         Third-Party Defendant

)
)
)
)
)
)
)
)
) **OPINION AND ORDER ON PLAINTIFF'S**
)   **MOTION FOR RECONSIDERATION**
)
)
)
)
)
)
)

THIS MATTER comes before the Court upon Plaintiff's Motion for Reconsideration of the Court's Opinion and Order on Summary Judgment as to Claims Against Defendant Sibyl H. Saunders ("Plaintiff's Motion") filed on October 5, 2015, pursuant to, *inter alia*, N.C. Gen. Stat. § 1A-1, Rule 54(b). Plaintiff's Motion requests the Court to reconsider its Opinion and Order entered June 9, 2015, as it pertains to Plaintiff's Motion for Summary Judgment, and specifically, (i) Plaintiff's First and Second Claims for Relief against Sibyl Saunders and (ii) Sibyl Saunders' affirmative defense under the Equal Credit Opportunity Act ("ECOA").[1]

THE COURT, having considered Plaintiff's Motion, the briefs in support of and in opposition to the Motion, and other appropriate matters of record, FINDS and CONCLUDES as follows:

---

[1] The ECOA is codified at 15 U.S.C. § 1691 *et seq.*

1.      On June 9, 2015, this Court entered an Opinion and Order (the "Summary Judgment Order") ruling on Plaintiff and Third-Party Defendant's Joint Motion for Summary Judgment.[2] In the Summary Judgment Order, the Court denied Plaintiff's motion for summary judgment as to Defendants' affirmative defense under the ECOA. Sibyl Saunders signed several loan modification agreements as to each of the loans.[3]  In each of the modification agreements BB&T agreed to defer large principal payments due from the borrowers and to restructure the loan terms to provide Defendants additional and extended periods of time to repay the loans.  The language in the loan modifications agreements signed by Sibyl Saunders read, in pertinent part, as follows:

> [A]ll other terms, conditions, and covenants of said Promissory Note remain in full force and effect, and that all other obligations and covenants of Borrower(s), except as herein modified, shall remain in full force and effect, and binding between Borrower(s) and Bank . . . .
> . . . .
>
> The original obligation of the Borrower(s) as evidenced by the Promissory Note is not extinguished hereby. It is and agreed that except for the modification(s) contained herein, the Promissory Note and any other Loan Documents or Agreements . . . shall be and remain in full force and effect. . . . Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to the terms of this Agreement, *waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank*, including without limitation the Promissory Note (emphasis added).[4]

---

[2] For purposes of this Opinion and Order, Plaintiff and Third-Party Defendant will be referred to jointly at "Plaintiff".

[3] The Court is unable to locate in the record any of the loan modification agreements related to the early of the two loans at issue in this case (the 11/6/97 loan), and the parties have not directed the Court to such modification agreements.  Accordingly, the Court relies on the language contained in the four loan modifications to the latter loan (2/08/05).

[4] A complete recitation of the facts surrounding Plaintiff's claims against Sibyl Saunders and her affirmative defense under the ECOA is contained in the Summary Judgment Order.  The Court found that there were facts in dispute regarding whether BB&T violated the ECOA by requiring Sibyl Saunders to co-sign the original loans as a guarantor.  That fact dispute, however, would not preclude summary judgment if she signed a clear and unambiguous waiver of her claims under the ECOA.

The Court held that the waiver language contained in the loan modifications agreements signed by Sibyl Saunders was sufficiently ambiguous that a jury needed to decide whether the language was intended to waive her ECOA defense. Accordingly, since the Court also concluded that since Sibyl Saunders had a viable affirmative defense under the ECOA, it could not grant summary judgment to Plaintiff on its First and Second Claims for Relief against Sibyl Saunders.

2.     On October 5, 2015, Plaintiff filed its Motion for Reconsideration of the Court's Opinion and Order on Summary Judgment as to Claims Against Defendant Sibyl H. Saunders. Plaintiff contends that the North Carolina Supreme Court's decision in *Ussery v. Branch Banking and Trust Company*, issued on September 25, 2015, alters the controlling law by holding that waiver language in the loan modification agreements identical to the waiver language this case was clear and unambiguous. Plaintiff contends that *Ussery* requires that the Court grant summary judgment in Plaintiff's favor as to Sibyl Saunders' ECOA defense. 2015 N.C. LEXIS 935 (N.C. Sept. 25, 2015).

3.     The facts in *Ussery* are strikingly similar to the facts in this matter. BB&T made a commercial loan to the plaintiff, and subsequently entered into six loan modification agreements with the plaintiff. The plaintiff was not in default when he entered into the modification agreements. Each of the loan modification agreements contained waiver language identical the language in the loan modification agreements signed by Sibyl Saunders. The waiver language in the loan modifications in *Ussery* read as follows:

> [A]ll other terms, conditions, and covenants of [the $425,000 Note] remain in full force and effect, and . . . all other obligations and covenants of Borrower(s), except as herein modified, shall remain in full force and effect, and binding between Borrower(s) and [the] Bank
> . . . .
>
> The original obligation of the Borrower(s) as evidenced by the [$425,000

3

Note] above described is not extinguished hereby. It is also understood and agreed that except for the modification(s) contained herein said [$425,000 Note] . . . shall be and remain in full force and effect. . . . Borrower and Debtor(s)/Grantor(s), if any, jointly and severally consent to the terms of this Agreement, *waive any objection thereto, affirm any and all obligations to Bank and certify that there are no defenses or offsets against said obligations or the Bank*, including without limitation the [$425,000 Note].

2015 N.C. LEXIS 935 at *7 (emphasis in original). The Supreme Court held that this waiver language was "clear and unambiguous," reaffirmed the plainitff's loan obligation, and clearly waived any claims and defenses to the plaintiff's indebtedness to the bank. *Id.* at *21, 26.

4. Based on the Supreme Court's ruling in *Ussery*, Plaintiff requests that the Court reconsider its conclusion that the waiver language in the loan modification agreements was ambiguous, conclude as a matter of law that the language is unambiguous and constitutes a clear waiver, and grant Plaintiff's motion for summary judgment against Sibyl Saunders. On October 12, 2015, Defendants filed their opposition to Plaintiff's Motion ("Defendants' Opposition"). In Defendants' Opposition, Defendants oppose Plaintiff's Motion and move for a statement of alternate grounds to deny Plaintiff's Motion. Defendants also move the Court to reconsider its denial of summary judgment to Sibyl Saunders and enter summary judgment in her favor, and if the Court does not grant summary judgment for Sibyl Saunders, that that the Court exclude at trial any evidence as to waiver of the ECOA defense.

5. Defendants do not dispute that the waiver language in *Ussery* is substantially identical to the waiver language at issue here. Instead, Defendants contend that *Ussery* is not dispositive because Sibyl Saunders' waiver of ECOA rights is unenforceable as a matter of law. Defendants argue that Sibyl Saunders' waivers were not contained in a forbearance agreement or settlement agreement, but instead were contained

4

in loan modification agreements, which were renewals of the existing loans which had already been renewed numerous times in the same way. Defendants contend Sibyl Saunders signed the waiver as part of BB&T's normal course of business in order for BB&T to renew the original credit extended to Defendants rather than as part of a forbearance following default or in final settlement of the loan obligations.

6.     Defendants argue that under the regulations governing the ECOA, a waiver cannot be included in any transaction constituting an "extension of credit." An "extension of credit" is defined in those regulations as "the granting of credit in any form (including, but not limited to . . . *the refinancing or other renewal of credit* . . .)." 12 CFR § 202.2(q) (emphasis added). Defendants contend that the loan modification agreements signed by Sibyl Saunders are "extensions of credit" since they are simply agreements to refinance or renew the Defendants' credit with BB&T. Defendants argue that *Ussery*, read in light of *Ballard v. Bank of America*, 734 F.3d 308 (4th Cir. 2013) and *RL Regi N.C., LLC v. Lighthouse Cove, LLC*, 367 N.C. 425 (2014), stands for the proposition that a party may waive ECOA rights in connection with a forbearance or settlement agreement resolving the *default* on a loan, but not a waiver obtained as part of a refinancing or renewal of a loan that is not in default.

7.     In *Ballard*, Michael Ballard took out a business loan for his business, FoodSwing. The defendant bank required Michael's wife, the plaintiff Kellie Ballard, to provide a personal guaranty of the loan. FoodSwing subsequently defaulted on the loan. The bank and the FoodSwing did not enter into a forbearance or settlement agreement in response to the default, but instead entered into a "modified loan agreement," which the bank required the plaintiff to guaranty. *Ballard*, 734 F.3d at 309. The modification contained a broad waiver requiring the plaintiff to waive "any and all claims" against the bank. *Id.* FoodSwing defaulted two more times, and each time entered into loan

5

modification agreements with the bank in which the plaintiff waived all claims against the bank. *Id.* The plaintiff subsequently sued the bank alleging that the bank violated the federal and state ECOA. The district court dismissed her claims, inter alia, on the grounds that she waived her ECOA claims by entering into the modified loan agreements. *Id.* The Fourth Circuit affirmed, reasoning as follows:

> [The bank] did not require Mrs. Ballard to execute a prospective waiver of her ECOA rights. Instead, the Bank obtained Mrs. Ballard's waiver only in exchange for its agreement to restructure the loan after FoodSwing defaulted. Thus, [the bank] agreed to work with the Ballards to resolve FoodSwing's defaults, but only if the Ballards consented to forfeit all past, present, and future claims against the Bank. . . .

734 F.3d at 314.

8. In *RL Regi,* the plaintiff provided $4,208,000 in financing for the acquisition and development of land in Brunswick County to Lighthouse Cove, LLC and Lighthouse Cove Development Corp., Inc. ("the LC Entities") in 2006. The loan was secured by the real estate and guaranteed by the individual business partners and their spouses, including defendants Lionel Yow and his wife, Connie Yow. *RL Regi*, 367 N.C. at 426. In 2009, the LC Entities defaulted on the loans. As part of a restructuring agreement, on December 7, 2009, the defendant executed a forbearance agreement. The plaintiff agreed to not exercise any of collection remedies under the loan agreements and to forego payments on the principal debt during the forbearance period. In exchange, Connie Yow agreed to a comprehensive waiver of all claims and defenses against the plaintiff. *Id.* The plaintiff subsequently sued the defendants, including the Yows, to collect the loans. In response, Connie Yow raised an affirmative defense that the plaintiff had violated the ECOA by requiring her guaranty on the original loan. *Id.* Following a jury trial, the trial court entered judgment for Connie Yow, concluding that the plaintiff had procured Connie Yow's guaranty in violation of the ECOA and that this violation constituted an affirmative

6

defense. The plaintiff appealed, and the Court of Appeals affirmed. *Id.* at 427. The Supreme Court reversed and remanded, concluding first that the waiver language was part of a "contractual forbearance agreement" that had to be interpreted "[a]pplying contract principles" to "determine the intent of the parties by the plain meaning of the written terms." *Id.* at 428. The Court further held:

> [The] waiver does not operate as a precondition to the original contract for credit … ; instead, it acts as a "negotiated benefit" or compromise of the original contract terms. Defendant's waiver here was not a precondition for [Connie Yow] to receive the original loan, but rather it was a negotiated settlement.
>
> In executing the forbearance agreement, defendant acknowledged the enforceability of her guaranty and waived her potential claims, including those under the ECOA, in exchange for leniency in repaying the debt. The trial court improperly allowed defendant to assert a claim she waived, thus depriving plaintiff of its rights under the forbearance agreement.

*Id.* at 429-30 (citations omitted).

9.      While Defendants' argument has some facial appeal, the Court is not persuaded that a borrower and only waive ECOA rights in a forbearance agreement or settlement agreement executed after the borrower has gone into default. First, while the defendant in *Ballard* was in default, she did not sign a forbearance or settlement agreements, but instead signed a loan modification agreement and debt restructuring agreements as Sibyl Saunders signed here. In addition, Sibyl Saunders most likely entered into the loan modifications to avoid potential default from a looming large payment that was due.

10.      Second, our Supreme Court has made clear that interpretation of these types of waivers contained in a contract between borrower and lender is primarily a product of applying long-standing contract interpretation principals. *RL Regi,* 367 N.C. at 428. Here, the waiver language contained in the loan modification agreements signed by Sibyl

Saunders is broad and comprehensive, and is unambiguous. *Ussery*, 2015 N.C. LEXIS 935 at *21, 26.

11. More significantly, the holdings in both *Ballard* and *RL Regi* were grounded in the facts that the waivers at issue were obtained not as a precondition for extending the original credit to the borrower, but as a negotiated benefit relieving the borrower from the terms of the original loan contract and a restructuring of the original loan terms that was advantageous to the borrower. The same is true of this case, where Sibyl Saunders was not required to prospectively waive her rights under the ECOA when she entered into the original loan agreements, but did so in exchange for avoiding a soon due large payment and obtaining a modification of the terms or the existing loan. The Court cannot conclude that there is any basis to be found in the holdings in *Ballard* and *RL Regi* for permitting a borrower to waive their ECOA claims in a forbearance or settlement agreement but not in a loan modification or restructuring agreement.

12. For the foregoing reasons, the Court GRANTS Plaintiff's Motion and reconsiders its prior ruling in the Summary Judgment Order in light of Carolina Supreme Court's decision in *Ussery v. Branch Banking and Trust Company*, 2015 N.C. LEXIS 935 (September 25, 2015). The Court finds that *Ussery* is controlling in interpreting the waiver language in the loan modification agreements signed by Sibyl Saunders. The Court further concludes that the language in the loan modification agreements is clear and unambiguous, and that Sibyl Saunders waived her rights and defenses under the ECOA. Therefore, summary judgment is GRANTED as to Plaintiff's motions for summary judgment as to the ECOA affirmative defense and as its First and Second Claims for Relief against Sibyl Saunders.

13. Accordingly, Defendants'/Third-Party Plaintiffs' Motion for Reconsideration of Denial of Summary Judgment to Sibyl H. Saunders and Motion for Statement of

Alternate Grounds to Deny Rialto's Motion for Summary Judgment as to Sibyl H. Saunders

is DENIED.[5]


        SO ORDERED, this the 3rd day of December, 2015.


                                    /s/ Gregory P. McGuire
                                    Gregory P. McGuire
                                    Special Superior Court Judge for
                                    Complex Business Cases

---

[5] Defendants' Alternative Motion *In Limine* to Exclude Evidence as to Waiver is moot since the parties have settled this matter. Accordingly, the motion is DENIED AS MOOT.