**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-1244**

BRISTOL METALS, LLC,

                Plaintiff - Appellee,

      v.

MESSER, LLC,

                Defendant - Appellant.

**No. 21-1245**

BRISTOL METALS, LLC,

                Plaintiff - Appellant,

      v.

MESSER, LLC,

                Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. David J. Novak, District Judge. (3:20−cv−00203−DJN)

Argued: September 14, 2022                    Decided: November 23, 2022

Before WYNN and HARRIS, Circuit Judges, and KEENAN, Senior Circuit Judge.

Reversed in part, affirmed in part, and remanded by unpublished opinion.  Senior Judge Keenan wrote the opinion, in which Judge Wynn and Judge Harris joined.

───────────────

**ARGUED**:  Joseph Michael Rainsbury, MILES & STOCKBRIDGE PC, Richmond, Virginia, for Appellant/Cross-Appellee.  Harold Edward Johnson, WILLIAMS MULLEN, Richmond, Virginia, for Appellee/Cross-Appellant.  **ON BRIEF**:  Thomas M. Wolf, MILES & STOCKBRIDGE PC, Richmond, Virginia, for Appellant/Cross-Appellee. Joseph E. Blackburn, III, WILLIAMS MULLEN, Richmond, Virginia, for Appellee/Cross-Appellant.

───────────────

Unpublished opinions are not binding precedent in this circuit.

2

BARBARA MILANO KEENAN, Senior Circuit Judge:

In 1998, a buyer and a seller entered into an agreement for the sale of certain industrial gases. After many successors-in-interest, one addendum to the agreement, and more than two decades of sales, a successor buyer sought to enforce the original price escalation rate from the 1998 agreement. When the successor seller responded that this escalation rate no longer applied, the buyer paid the increased prices under protest and later filed this action seeking a declaratory judgment and damages for breach of contract.

After the parties filed cross-motions for summary judgment, the district court held that the price escalation rate in the 1998 agreement remained in effect but that the buyer had waived for several years its right to enforce that rate. The court further held that the buyer was not entitled to any damages under the parties' agreement. Both parties appealed from the district court's judgment.

Upon our review, we conclude that the parties' relationship was not governed by any contract after September 1, 2013. The addendum provided this fixed contract expiration date, which supplanted the automatic renewal provision of the 1998 agreement. We therefore reverse the district court's conclusion that the automatic renewal provision and the price escalation rate set forth in the 1998 agreement applied after September 1, 2013, and we affirm the district court's conclusion that the buyer is not entitled to recover any damages.

I.

In September 1998, Bristol Metals, LLC (Brismet) and Messer LLC (Messer) entered into a product supply agreement (the 1998 agreement).[1] In the 1998 agreement, Brismet agreed to buy, and Messer agreed to sell, helium, nitrogen, argon, and hydrogen for use at Brismet's manufacturing facility in Munhall, Pennsylvania. The 1998 agreement established an initial term that ended ten years later. The 1998 agreement also included "a renewal term equal to the initial [ten-year] term" and "successive [ten-year] renewal terms thereafter" (the automatic renewal provision). Either party could terminate the 1998 agreement by providing twelve months' written notice before the end of the initial term or any renewal term. The 1998 agreement also fixed the price of the industrial gases for eighteen months, and imposed afterward a maximum annual price escalation rate of 2% (the 2% escalation rate).

In September 2008, Brismet and Messer executed "an addendum" to the 1998 agreement (the 2008 addendum, or the addendum). The 2008 addendum limited annual price escalations to a rate of 9% in the second year and a rate of 8% in the third, fourth, and fifth years of the 2008 addendum's term. The 2008 addendum also "extend[ed] the current product supply agreement . . . through September 1, 2013 (60 months from the current expiration date)." The 2008 addendum did not contain a renewal provision, nor did it outline any escalation rates after September 1, 2013.

---

[1] Although Brismet's and Messer's predecessors entered into the 1998 agreement, we refer only to Brismet and Messer because each assumed their predecessors' rights and obligations.

4

In 2017, nearly four years after the addendum had expired, Brismet sent Messer a letter stating its intent to terminate the 1998 agreement executed by its predecessor-in-interest. Brismet recently had purchased the Munhall facility and was unaware of the 2008 addendum. Therefore, Brismet thought the 1998 agreement had renewed automatically in 2008 for ten years and would expire in September 2018. Messer responded that under the 1998 agreement, "as amended," a ten-year automatic renewal term had begun in 2013 and would conclude in 2023. Despite this disagreement regarding the terms of their obligations, Brismet and Messer did not take any further steps at that time to resolve their differing interpretations of the amended 1998 agreement.

Between 2013 and 2020, Brismet continued to purchase industrial gases from Messer even though Messer annually increased the price of each gas by a rate of more than the 2% escalation rate contained in the original 1998 agreement. Each year during this period, Messer annually increased the price of helium between 2.5% and 32%; the price of nitrogen between 4.61% and 10%; the price of argon between 2.08% and 11.38%; and the price of hydrogen between 3% and 8.7%. Until January 24, 2020, Brismet paid for the industrial gases at these escalated rates without protest.

On January 24, 2020, Brismet sent a letter to Messer (the January 2020 letter), stating that Brismet had learned of the 2008 addendum and objected to the price increases that had exceeded, and that in 2020 also would exceed, the 2% escalation rate. On February 3, 2020, Messer responded that the 2% escalation rate from the 1998 agreement was not reinstated after the 2008 addendum expired in September 2013. Brismet promptly filed this suit in the district court (1) alleging breach of contract based on Messer's imposition

of prices that exceeded the original 2% escalation rate, and (2) seeking a declaratory judgment to limit future annual increases to a 2% escalation rate or to declare that Brismet could terminate its contractual relationship with Messer immediately.

Both parties later moved for summary judgment. The district court granted in part and denied in part each party's motion. Applying Pennsylvania contract law, the court held that both the 2% escalation rate and the automatic renewal provision from the 1998 agreement remained in effect after the 2008 addendum expired on September 1, 2013. The court reasoned that the 2008 addendum did not supplant or extinguish these provisions in the 1998 agreement because the 2008 addendum did not include language that "refer[red] to or purport[ed] to override" them. The court also reasoned that the 2008 addendum, which separately referred to both "the life of the *addendum*" and "the life of the *agreement*," contemplated the continued operation of the 1998 agreement.[2] Although the court determined that Brismet had waived its right to enforce the 2% escalation rate before sending the January 2020 letter, the court held that Brismet could enforce that rate prospectively because it had retracted its waiver by sending the January 2020 letter. Finally, the court declared that the 1998 agreement would remain in effect until at least September 2023.

---

[2] We note that in two other paragraphs, the 2008 addendum contained explicit references to the 1998 agreement, first referring to the 1998 agreement as "the Product Supply Agreement dated September 4, 1998," and then as the "current product supply agreement." In other paragraphs, the language of the 2008 addendum referred generally to the addendum as an agreement: "after year 2 of the agreement," "throughout the life of this agreement," and "for year 1 of the supply agreement."

After receiving supplemental briefing on the issue of damages, the district court held that Brismet could not recover any damages because Messer's 2020 price increases had already taken effect by the time that Brismet sent the January 2020 letter. Both parties appealed from the district court's judgment.

## II.

On appeal, Messer challenges the district court's holding that the 2% escalation rate applied after the September 1, 2013 expiration date referenced in the 2008 addendum. Brismet, in turn, challenges on cross-appeal the district court's holding that it is not entitled to damages for the prices Messer charged in 2020 in excess of the 2% escalation rate. We now address the merits of these arguments.

We review both the district court's interpretation of the parties' contract and its grant of summary judgment de novo. *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 118 (4th Cir. 2021); *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 879 F.3d 101, 107 (4th Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Both parties agree, and the district court correctly held, that Pennsylvania law applies to the parties' dispute.[3]

---

[3] When a district court exercises diversity jurisdiction, we apply the choice-of-law rules of the state of the district court, here, Virginia. *Kenney v. Indep. Ord. of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014). Virginia's choice-of-law rules generally require us to apply the law of the state where the parties formed the contract in interpreting the contract or determining the contract's nature and validity. *Dreher v. Budget Rent-A-Car Sys., Inc.*, (Continued)

Messer contends that the 8% and 9% maximum escalation rates in the 2008 addendum, which applied for a five-year period, replaced the 2% escalation rate in the 1998 agreement. Messer submits that after the addendum expired on September 1, 2013, the automatic renewal provision of the 1998 agreement extended the parties' contract for ten years until 2023, but that Messer was not bound by any maximum escalation rate during this ten-year renewal period. Messer further argues that the parties' post-addendum course of performance, replete with years of payments made by Brismet without mention of a maximum escalation rate, confirms this view.

In response, Brismet asks us to affirm the district court's holding that the 2008 addendum did not permanently override the 2% escalation rate in the 1998 agreement. According to Brismet, the express language in the 1998 agreement establishing the 2% escalation rate was not modified by either (1) the 2008 addendum's "silen[ce] regarding the parties' rights after [the addendum] expired," or (2) the parties' post-addendum course of performance. Thus, Brismet submits that the 2% escalation rate took effect again after the higher escalation rates in the 2008 addendum expired on September 1, 2013.

Alternatively, Brismet argues that the 2008 addendum altered and, thus, replaced *both* the 2% escalation rate in the 1998 agreement *and* the agreement's automatic renewal provision. Therefore, Brismet alternatively contends that the parties' agreement did not

---

634 S.E.2d 324, 327 (Va. 2006). However, if the contract will be performed in a different place, under Virginia law we apply the law of the state of the place of performance in interpreting the contract. *Poole v. Perkins*, 101 S.E. 240, 241 (Va. 1919); *Erie Ins. Exch. v. Shapiro*, 248 Va. 638, 640 (1994). Here, the agreement was executed in Pennsylvania and established that state as the place of performance. Thus, we apply Pennsylvania contract law.

automatically renew when the 2008 addendum expired on September 1, 2013, and that the parties' relationship was not governed by a written contract after that date. In response, Messer asserts that the terms of the 2008 addendum did not conflict with the automatic renewal provision in the 1998 agreement and, thus, the addendum did not supplant that provision. We agree with Brismet's alternative argument, which is dispositive of this appeal.

In interpreting contract language under Pennsylvania law, we first look to the parties' writing to discern their intent. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004); *see* 13 Pa. Cons. Stat. § 1103(b) (principles of Pennsylvania law supplement provisions of Pennsylvania's version of the Uniform Commercial Code (UCC) unless displaced by the UCC). Here, we review two writings, namely, the 1998 agreement and the 2008 addendum. *See Elliott-Lewis Corp. v. York-Shipley, Inc.*, 94 A.2d 47, 49 (Pa. 1953) (explaining that parties may modify a written agreement by a later written agreement); *see also* 13 Pa. Cons. Stat. § 2209 (referencing contract modification).

In analyzing the terms of these two documents under Pennsylvania law, we treat the 2008 addendum as "a substitute for the original [1998 agreement] in so far as it alters, modifies, or changes it." *Wagner v. Graziano Constr. Co.*, 136 A.2d 82, 84 (Pa. 1957) (applying this rule to an oral contract modification) (quoting *Knight v. Gulf Refining Co.*, 166 A. 880, 882 (Pa. 1933)); *see also Melat v. Melat*, 602 A.2d 380, 385 (Pa. Super. 1992). In other words, under Pennsylvania law, a contract modification may supersede certain provisions of the original agreement while leaving other provisions unaffected.

9

In the present case, if the automatic renewal provision had continued in effect without the addendum, the automatic renewal provision would have extended the 1998 agreement for another ten-year period beginning in September 2008. However, instead of leaving the subject of contract duration untouched, the 2008 addendum addressed contract duration and specified that the parties agreed to extend the 1998 agreement for a fixed period of five years: "[Messer] will also be extending the *current product supply agreement* . . . through September 1, 2013 (60 months from the current expiration date)." Although the 2008 addendum did not contain explicit language removing the 1998 agreement's automatic renewal provision, the 2008 addendum necessarily supplanted that provision by including a five-year extension that patently conflicted with the previously agreed to ten-year extension.[4]

This conclusion is reinforced when the fixed, five-year period "extending the current product supply agreement" is read in conjunction with the addendum's reference to the "current expiration date" of the 1998 agreement. In employing such finite language in the addendum, the parties plainly signaled their intent to limit the duration of their contractual obligations. Thus, the plain language of the 2008 addendum extending the

---

[4] The parties apparently recognized and addressed a similar conflict when they entered into the 1998 agreement. In the 1998 agreement, Paragraph 1 established the initial term, the automatic renewal provision, and the termination provision, while Paragraph 9 permitted Messer to modify that term and extend the contract if it matched a competitor's offer. To account for the inconsistency between the extensions contemplated by these paragraphs, Paragraph 9 explicitly retained the termination provision in Paragraph 1 by stating that an extension under Paragraph 9 "shall not modify the requirements for notice of termination provided for in Paragraph 1" of the 1998 agreement. Unlike Paragraph 9 of the 1998 agreement, however, the addendum extended the agreement without explaining which, if any, of the sections of Paragraph 1 would remain in effect.

10

"current product supply agreement" until September 1, 2013, altered and replaced the ten-year renewal term of the 1998 agreement.

We therefore conclude that the parties' amended agreement, as reflected in the unchanged terms of the 1998 agreement and the changes made in the 2008 addendum, included a five-year extension of "the current product supply agreement" until September 1, 2013. No language in the parties' amended agreement contemplated automatic renewal upon the September 1, 2013 expiration date. And, although some remaining provisions of the 1998 agreement contemplated the possibility of extending the agreement, the record does not show any extension-triggering events that occurred before September 1, 2013. We therefore hold that the district court erred in concluding that the automatic renewal provision and the 2% escalation rate in the 1998 agreement remained in effect after September 1, 2013.

Given the absence of any contractual relationship between the parties after September 1, 2013, we do not consider Messer's argument that the parties' course of performance after that date "confirms their intent to end the [2%] price escalation cap."[5] This argument, like many of the others presented, presumes the existence of an agreement for us to interpret. *See* 13 Pa. Cons. Stat. § 1303(d) (explaining that the parties' course of performance is relevant in interpreting, supplementing, or qualifying the terms "of the agreement").

---

[5] We also note that the maximum escalation rates in the 2008 addendum altered and, thus, replaced, the 2% escalation rate in the 1998 agreement until the amended agreement expired in September 2013.

Our conclusion also is dispositive of Brismet's argument on cross-appeal that the district court erred by failing to award it damages after January 24, 2020. Because the parties did not have a contract imposing a 2% maximum escalation rate after that date, Brismet is not entitled to recover damages for the prices it paid after sending the January 2020 letter. *See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (explaining that an element of a breach of contract claim is the existence of a contract). We thus affirm the district court's ruling that Brismet is not entitled to damages for any payments made after sending the January 2020 letter.

III.

For these reasons, we reverse the district court's conclusion that the automatic renewal provision and the 2% escalation rate set forth in the 1998 agreement applied after September 1, 2013. On Brismet's cross-appeal, we affirm the district court's conclusion that Brismet is not entitled to contract damages. We remand the case for further proceedings consistent with this opinion.

*REVERSED IN PART,*
*AFFIRMED IN PART,*
*AND REMANDED*